Howard J. MEILS, deceased employee, by Marilyn MEILS, petitioner, Relator,

v.

NORTHWESTERN BELL TELEPHONE COMPANY, Self-Insured, Respondent.

No. C4-83-1022.

Supreme Court of Minnesota.

Oct. 12, 1984.

Michael J. Garvey, Jr., St. Paul, for relator.

Michael C. Jackman, Minneapolis, for respondent.

COYNE, Justice.

By writ of certiorari, relator Marilyn Miels seeks review of the Workers' Compensation Court of Appeals' denial of her claim for death benefits following her husband's suicide. The Court of Appeals overturned the compensation judge's award of benefits to relator and her two minor children. We reverse and remand for further proceedings in accordance with this opinion.

I

The decedent Howard Miels was employed as a combination man by respondent Northwestern Bell Telephone Company (Bell) at Mora, Minnesota. His job required strenuous physical labor including cable splicing, trench digging, pulling in buried cables, and climbing telephone poles. On October 26, 1972, when he was 29 years old, Howard sustained a disabling injury to his lower back arising out of and in the course of his employment. Howard twice underwent back surgery, but excruciating back pain and numbness forced him to stop working at Bell. Approximately 9 years after his injury, on July 2, 1981, Howard died of a self-inflicted gunshot wound.

Following his injury Howard's life was dominated by mental suffering and despair. Shortly after the second back surgery Howard fell into a deep depression for which he was hospitalized. He was distraught by his inability to work and felt he was an inadequate husband and father. Howard's relationships with his wife and children gradually deteriorated. He was extremely jealous of his wife and suspicious of her fidelity. He was also increasingly abusive of his son until in the spring of 1981 the 15 year old boy notified the welfare department. Howard was also dis-

tressed by Bell's surveillance of his activities since he believed they were indicative of the company's opinion that he was a malingerer. His problems were further exacerbated when early in 1980 he commenced drinking and thereafter developed an alcohol problem.

Expert testimony regarding the psychological effect of Howard's back injury was provided by Dr. Robert Clark, a psychiatrist whom Howard began seeing in May 1973, shortly after he learned he was permanently disabled, and whom Howard continued to see on a monthly basis until his death. Dr. Clark diagnosed Howard as a paranoid-schizophrenic. He stated he was a man with very strong feelings of inadequacy and mistrust of others. Dr. Clark explained that while Howard was able to cope well with his psychological problems prior to his injury, his physical disability and the resultant blow to his self-esteem made his problems more pronounced. These psychological problems also contributed to Howard's domestic difficulties which, according to Dr. Clark, were manifestations of his sense of lost power over the family. Dr. Clark testified that Howard's work-related injury substantially contributed to his suicide, which Dr. Clark characterized as an impulsive act, and he stated that had the injury not occurred there was a "reasonable chance" that Howard would not have killed himself.

Dr. Loren F. Pilling, a psychiatrist who testified on behalf of Bell, never examined Howard and based his opinion on Dr. Clark's records. Like Dr. Clark, Dr. Pilling testified that Howard's injury and resulting physical disability were substantial contributing factors in his eventual suicide. He stated, however, that he could not identify the injury as the single event which caused Howard to commit suicide. Though chronologically first, according to Dr. Pilling, Howard's injury was only one of several stressful events in his life which led to his suicide. In his opinion an altercation between Howard and his son precipitated an intentional suicide.

## II

The primary issue presented is whether or not there is a sufficient causal relationship between Howard's work-related injury and his death to allow compensation. Relying on *Hendrickson v. George Madsen Construction Co.*, 281 N.W.2d 672 (Minn. 1979), as controlling authority, the Workers' Compensation Court of Appeals ruled that Howard's suicide in 1981 was "too remote" from his 1972 work-related back injury to be compensable. The Workers' Compensation Court of Appeals concluded an award of compensation would constitute an extension of the coverage of the Workers' Compensation Act to nonwork-related events occurring during the compensation claim process—a matter which should be left to the legislature.

■ The *Hendrickson* case, however, is inapposite. Hendrickson died of a myocardial infarct sustained shortly after testifying at a compensation hearing concerning his work-related shoulder injury. It was stipulated that the stress of his appearance at the hearing was a contributing cause of Mr. Hendrickson's heart attack, but it was also conceded that neither the myocardial infarction nor Mr. Hendrickson's underlying pulmonary emphysema and coronary insufficiency had any causal connection, either physical or mental, with the shoulder injury he had sustained five years earlier. We held that an injury which is medically unrelated to a compensable work-related injury does not become a compensable injury simply because it was sustained while the employee was pursuing a compensation claim. Since workers' compensation is solely a creature of statute, policy decisions regarding the scope of the Workers' Compensation Act are properly for the legislature; it would be an improper exercise of the judicial function to extend coverage to an event which does not arise out of and in the course of employment and is, therefore, beyond the compass of the Act.

■ Unlike *Hendrickson*, we are not here called upon to enlarge the scope of workers' compensation coverage to include a suicide which does not arise out of and in

the course of employment. The issue now before us is whether or not the employee's compensable work-related injury caused or was a contributing cause of his suicide in the medical or psychological sense. This is essentially a fact question which must be determined on a case by case basis—a process suited to the judicial function.

Minn.Stat. § 176.021, subd. 1 (1982), provides that employers are not liable for compensation when an injury is self-inflicted or is proximately caused by intoxication. In *Anderson v. Armour & Co.*, 257 Minn. 281, 101 N.W.2d 435 (1960), we first recognized as compensable a death by suicide. The suicide, which resulted from a psychotic depression precipitated by a work-related accident, arose out of and in the course of the decedent's employment. *See also, Olson v. F.I. Crane Lumber Company*, 259 Minn. 248, 107 N.W.2d 223 (1961); and *Lehman v. A.V. Winterer Co.*, 272 Minn. 79, 136 N.W.2d 649 (1965). As a consequence, however, of a 1967 legislative amendment to section 176.021 specifically excluding suicides from compensable deaths, in *Schwartz v. Talmo*, 295 Minn. 356, 205 N.W.2d 318 (1973), we were compelled to rule that death by suicide was not compensable under the Minnesota Workers' Compensation Act. Subsequent to the *Schwartz* decision, in 1973, the legislature again amended the statute to delete the language declaring suicides noncompensable. 1973 Minn.Laws, ch. 623. Hence, this case presents an opportunity to reconsider the most appropriate standard for determining whether or not a death by suicide is compensable.

Over the years courts have formulated two rules for determining whether or not a suicide arises out of and in the course of employment. Although not cited, the standard articulated in *Anderson v. Armour & Co.*, *supra*, was derived from an early Massachusetts decision, *In re Sponatski*, 220 Mass. 526, 108 N.E. 466, 468 (1915), which held that a suicide was compensable only under certain limited circumstances:

[W]here there follows as the direct result of a physical injury an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy "without conscious volition to produce death, having knowledge of the physical consequences of the act," then there is a direct and unbroken causal connection between the physical injury and the death.

*Id.* at 108 N.E. at 468.

Once regarded as the majority rule, the *Sponatski* standard is couched in language long outmoded and is today seldom followed. The thrust of much of the criticism of *Sponatski* is directed to its failure to take into account the role pain and despair may play in the breakdown of the employee's rational mental process. *See, e.g., Kahle v. Plochman, Inc.*, 85 N.J. 539, 428 A.2d 913 (1981); *Delaware Tire Center v. Fox*, 401 A.2d 97 (Del.Super. 1979); *Brenne v. Department of Industry, Labor & Human Relations*, 38 Wis.2d 84, 156 N.W.2d 497 (1968). More to the point, we believe, is criticism of *Sponatski's* insistence that the employee realize neither the purpose nor the physical effect of the suicidal act. In *Anderson v. Armour & Co.*, *supra*, we noted our earlier recognition of the principle that one may commit an act knowing it was wrong and with full realization of its consequences, yet the act may be the result of insanity rather than the actor's conscious or rational act. In Minnesota, as in other jurisdictions, a subsequent injury which is the direct and natural consequence of a compensable injury is also compensable. See *Andeen v. Emmaus Nursing Home*, 256 N.W.2d 290 (Minn. 1977); *Rohr v. Knutson Construction Co.*, 305 Minn. 26, 232 N.W.2d 233 (1975). The causal test for compensability of a subsequent injury is the familiar common law test of proximate cause and superseding cause. The employee's realization of the purpose and physical consequences of his act are irrelevant to the question of causation. If a work-related injury has produced a mental derangement such that at the time of the suicide the employee does not have conscious or rational control over his actions, his realization that his action is

self-destructive is not a superseding cause of his death.

In recent years what is known as the chain of causation test has supplanted the *Sponatski* test as the majority rule. Under the chain of causation standard, death by suicide is compensable if a work-related injury and its consequences, such as extreme pain and despair, directly cause a mental derangement of such severity that it overrides normal or rational judgment. *In re Death of Stroer*, 672 P.2d 1158, 1161 (Okla.1983); *Kahle v. Plochman, Inc.*, 85 N.J. 539, 428 A.2d 913, 916 (1981); *Delaware Tire Center v. Fox*, 401 A.2d 97, 100 (Del.Super.1979). It is frequently said that the causal chain is unbroken if, but for the injury, the suicide would not have occurred; the suicide is an intervening act rather than a superseding or independent intervening cause of death. *Brenne v. Department of Industry, Labor & Human Relations*, 38 Wis.2d 84, 156 N.W.2d 497, 501 (1968). When such mental derangement exists, the suicide cannot be considered "wilful" or "intentional" within the meaning and intent of the Workers' Compensation Act. *Whitehead v. Keene Roofing Co.*, 43 So.2d 464, 465 (Fla.1949).

■ We conclude that the chain of causation standard is a realistic and reasonable criterion for determining whether or not a death by suicide is compensable under the Workers' Compensation Act, and we adopt it as the standard henceforth applicable in Minnesota. The burden of proof is on the claimant to establish by substantial evidence that the employee's work-related injury and its consequences directly caused a mental derangement of such severity that it overrode normal, rational thinking and judgment. The claimant must prove by substantial evidence an unbroken chain of causation between the work-related injury, the mental derangement, and the suicide. As in other subsequent injury situations, the work-related injury need not be the *sole* cause of the suicide, but it must be a substantial cause. *Roman v. Minneapolis Street Railway Co.*, 268 Minn. 367, 129 N.W.2d 550 (1964).

Compensation will not be awarded if the suicide is caused primarily by non-work connected problems. The employer may attack the asserted causal chain with evidence that the decedent did not suffer from the claimed mental derangement or that stronger influences unrelated to the employment were the principal cause of the suicide. In those cases in which the employer presents evidence sufficient to rebut the claimed chain of causation, the statutory exclusion of self-inflicted injury is a complete defense. Minn.Stat. § 176.021, subd. 1 (1982).

■ Here the employee was hospitalized for depression shortly after learning that he was permanently disabled. He was diagnosed as a paranoid-schizophrenic. Although almost nine years elapsed between Howard's work-related injury and his suicide, Howard was under the care of a psychiatrist, whom he visited monthly, during that entire period. Both psychiatrists agreed that Howard's work-related back injury and its consequences were substantial contributing causes of Howard's suicide. Although both regarded the altercation with the son as the event which precipitated Howard's action, Howard's treating psychiatrist testified that the breakdown of Howard's relationship with his wife and children was itself the result of the injury. Inasmuch as the evidence is uncontroverted that Howard's injury was a substantial contributing cause of the serious mental disturbance which ultimately resulted in his suicide, we hold that the employee's death was compensable.

### III

Because we have determined that Howard's death is compensable, we address an issue which the Workers' Compensation Court of Appeals did not reach: Does Minn.Stat. § 176.111, subd. 21 (1982), bar the payment to petitioner of weekly workers' compensation benefits? Section 176.111, subd. 21, provides that the combined total of weekly government survivor benefits and workers' compensation benefits shall not exceed 100 percent of the de-

ceased employee's wage at the time of the injury which caused his death and that no workers' compensation death benefit shall be paid for any week in which the survivor benefits paid under the federal program exceed 100 percent of such weekly wage.

In *Redland v. Nelson's Quality Eggs, Inc.*, 291 N.W.2d 371, 373 (Minn.1980), we held that mother's insurance benefits did not constitute "benefits under any government survivor program within the meaning of Minn.Stat. § 176.111, subd. 21 (1976)." Effective July 1, 1981, however, section 176.111, subd. 21, was amended in two respects: The term "dependent" was stated to mean "dependent surviving spouse together with all dependent children and any other dependents." In other words, for purposes of subdivision 21, the term "dependent" is used collectively. In addition, the amendment specified that for purposes of subdivision 21, mother's insurance benefits are "benefits under a government survivor program." At the same time section 176.111, subd. 10, was amended by the addition of the proviso that subdivision 10 should "not be construed to increase the combined total of weekly government survivor benefits and workers' compensation beyond the limitation established in section 176.111, subdivision 21."

In calculating the amount of benefits to which the petitioner was entitled, the compensation judge correctly ruled that the claim for death benefits was governed by the Act in effect on the date of the employee's death, July 2, 1981. *Borchardt v. Biddick*, 306 N.W.2d 817 (Minn.1981). Thus, the applicable limitation here is that prescribed by section 176.111, subd. 21, as amended effective July 1, 1981. Although the amendment seems clearly to have been designed to vitiate the holding in *Redland, supra*, the award of compensation here appears to have been calculated on a formula derived from *Redland*. We regard that computation as erroneous and remand for recomputation according to the following principles.

■ The limitation imposed by section 176.111, subd. 21, shall first be applied to the combined total of weekly government survivor benefits, including mother's insurance benefits and benefits for surviving dependent children, and workers' compensation benefits. The allocation provisions of section 176.111, subd. 10, shall then be applied to such workers' compensation benefits as are awarded after application of the limitation imposed by subdivision 21.

Relator is allowed attorney fees of $400.

Reversed and remanded for further proceedings in accordance with this opinion.

KELLEY, J., took no part in the consideration or decision of this case.