Randy FELTON, Relator,

v.

ANTON CHEVROLET and Western National Mutual Ins. Co., and MN Dept. of Human Services, Intervenor, MN Dept. of Labor & Industry/VRU, intervenor, MN Dept. of Jobs & Training/UI, intervenor, Respondents.

No. C8-93-2191.

Supreme Court of Minnesota.

March 18, 1994.

Linda Schoep, Appleton, for relator.

Kristin M. Cajacob, Christie D. Ahern, Minneapolis, for Anton Chevrolet, et al.

Michael Schoff, St. Paul, for Dept. of Human Services.

Vic Schulz, St. Cloud, for Dept. of Labor & Industry.

Richard Rhode, St. Paul, for Dept. of Jobs & Training.

WAHL, Justice.

The Workers' Compensation Court of Appeals reversed the compensation judge's findings pertaining to a compensable low back injury. We reverse and remand.

Randy Felton worked for Anton Chevrolet as a used car "reconditioner," a job involving such activities as cleaning engine compartments, pulling seats to clean the interior of vehicles, installing running boards on pickups, replacing leaf springs, repairing brakes, replacing wheels and steering gears, rotating tires, and installing block heaters. On August 15, 1991, Felton worked on a four-wheel drive pickup truck with brake problems. After completing the day's work, Felton went home feeling exhausted and "aching all over." He spent the evening with his family, playing memory games with his children, and went to bed. Around 2:00 a.m., he awoke with severe low back pain. With the exception of a brief episode of low back pain at work in February 1991,[1] Felton had experienced no trouble with his low back. Felton continued to work, taking about an hour off to see his chiropractor, until August 29, 1991, when he was hospitalized for three days following another acute onset of severe low back pain. A CT scan obtained during the hospitalization showed a "fairly prominent right paracentral disc herniation at the L5–S1 level" that had

"compressed the right S1 nerve root as well as the anterior right lateral aspect of the thecal sac." On September 9, 1991, Felton returned to work with restrictions and continued to receive medical care for his low back condition. In early February 1992, Felton was laid off from his job with Anton Chevrolet and received unemployment compensation.

Felton's local physician eventually referred him to Dr. Steven Noran, a neurologist. Noting that Felton had been "injured on the job on August 1[5], 1991," Dr. Noran diagnosed a lumbosacral sprain/strain syndrome with superimposed lumbar disc disease and a right-sided disc herniation at L5–S1 with entrapment of the right S1 nerve root "most likely."[2]

Felton was then examined by Dr. Elmer R. Salovich, an orthopedic surgeon, at the request of Anton Chevrolet and its workers' compensation carrier, Western National Mutual Insurance Company. Dr. Salovich diagnosed "a herniated disc at the L5–S1 interspace on the right, which is improving." As to the "etiology" of this condition, Dr. Salovich said that "if the patient's history does not include the onset of back symptoms while at work on August 1[5], 1991, but rather developed in the early hours of August 1[6], 1991," it was his opinion that the "work activity did not cause an injury to his back." Instead, Dr. Salovich thought the pain symptoms that developed in the "early hours on August 1[6], 1991 were the result of some other activity including [Felton's] injury of February of 1991." Finally, Dr. Salovich indicated that if the onset of low back symptoms had occurred at work in August, any injury would have been merely a temporary aggravation.

In May 1992, Felton's lawyer asked Dr. Noran for his opinion as to (1) whether Fel-

---

1. On February 8, 1991, Felton had an onset of low back pain at work while bending over a car and installing a block heater. He received brief chiropractic care, lost no time from work, and paid his own chiropractic bills; he did not report this as a work injury because he thought he had fully recovered within a week.

2. The WCCA made much of the fact that Dr. Noran's report contained an injury date of August 16 and not August 15; but a review of the reports from the medical experts from both sides reflects that everyone was operating with the wrong dates and that the error was insignificant. See, e.g., Felton v. Anton Chevrolet, —— Workers' Comp. Dec. ——, slip. op. 4, note 8, WCCA File No. 469–944–0665 (WCCA October 8, 1993).

ton's disability was related to Felton's work activity "on August 1[5], 1991" and (2) whether Felton sustained a *"Gillette* injury[3] as a result of his work activities as an auto mechanic * * *" Appended to the inquiry were portions from Felton's deposition relating to Felton's work activities in general as well as the events covering August 15 and 16, 1991. By letter dated June 4, 1992, Dr. Noran responded affirmatively to both questions;[4] Felton amended his claim petition, which had initially been filed in December 1991, to include an "8–16–91 and *Gillette* Injury."

The compensation judge found that although there was insufficient evidence of a *Gillette* injury,[5] there nevertheless was sufficient evidence to support the claim of a work injury of August 15, 1991, warranting an award of various benefits, including wage loss, medical, rehabilitation, and permanent partial disability benefits. On appeal, the WCCA reversed the determination of a compensable low back injury of August 15, 1991.

 "Until the time comes when medical knowledge has progressed to such a point that experts in the field of medicine can agree, causal relation in determining compensable injury or disease will have to remain in the province of the trier of fact." *Ruether v. State,* 455 N.W.2d 475, 478 (Minn. 1990), *quoting Golob v. Buckingham Hotel,* 244 Minn. 301, 304–05, 69 N.W.2d 636, 639 (1955). In this case, the compensation judge found that Felton's employment on August 15, 1991, resulted in the lumbar disc herniation that subsequently disabled him. This finding was supported by Felton's deposition

and hearing testimony as to the nature of his work that day, the chiropractic records, and the low back symptoms for which Felton required hospitalization soon thereafter. There was also the opinion of Dr. Noran who, in relating Felton's disc herniation to the work of August 15, 1991, had the benefit of Felton's deposition testimony. That Felton had an underlying lumbar disc disease does not disqualify his claim so long as the employment aggravated, accelerated, or combined with the infirmity to produce the disability for which compensation is sought; *e.g., Bender v. Dongo Tool Co.,* 509 N.W.2d 366 (Minn.1993), *citing Wyatt v. Hancock Nelson Mercantile Co.,* 296 Minn. 489, 207 N.W.2d 342 (1973); and even though the medical experts here differed, as they often do, a conflict in the opinions of medical experts is generally to be resolved by the compensation judge. *Ruether,* 455 N.W.2d at 478. The compensation judge's determination of a compensable low back injury was supported by substantial evidence. We therefore reverse the WCCA's determination that a low back injury of August 15, 1991 had not been established. We also remand the case to the WCCA for consideration of the remaining issues raised but not reached it light of its disposition.

Employee is awarded $400 in attorney fees.

Reversed and remanded.

---

3. *Gillette v. Harold, Inc.,* 257 Minn. 313, 321–22, 101 N.W.2d 200, 205–06 (1960) (where a preexisting infirmity is aggravated by repetitive minute trauma as a result of the ordinary and necessary duties of employment, the disability resulting from such aggravation is compensable as a personal injury under the workers' compensation statute).

4. Dr. Noran wrote:
 In my opinion, Mr. Felton sustained a lumbosacral strain/sprain syndrome and radiculopathy with a herniated disc at L5–S1 toward the right and involving entrapment of the right S1 nerve root. I feel that this is related to Mr. Felton's work activity on August 1[5], 1991. In review of the situation, I do feel that Mr. Felton has sustained a Gillette type injury as a

result of his work activities as an auto mechanic while employed with Anton Chevrolet.

5. A *Gillette* injury claim requires proof of a causal connection between the employee's ordinary daily work and the disability for which compensation is claimed. In that a determination of a *Gillette* injury depends primarily on medical evidence, there is often deposition testimony of medical experts on the question of whether the claimant's employment aggravated or accelerated an underlying condition such as a lumbar disc disease. *E.g., Forseen v. Tire Retread Co.,* 271 Minn. 399, 136 N.W.2d 75 (1965); *see also* Minn. Stat. § 176.155, subd. 5 (1992). As the compensation judge and the WCCA observed, in this case medical evidence of a *Gillette* injury was rather scant.