Judith **LIPKA** as Special Administrator of the Estate of Marianne Bohl, petitioner, Appellant,

v.

MINNESOTA SCHOOL EMPLOYEES ASSOCIATION, LOCAL 1980, et al., Respondents.

No. C1–95–707.

Supreme Court of Minnesota.

July 11, 1996.

Susan McKay, McKay Law Firm, Bemidji, for Appellant.

Gregg Corwin, St. Louis Park, for Respondents.

## OPINION

COYNE, Justice.

On petition of Judith Lipka, Special Administrator of the Estate of Marianne Bohl, we review a decision of the court of appeals affirming the summary judgment of dismissal of the plaintiff Marianne Bohl's complaint to recover damages for misconduct allegedly committed by her union and by a co-worker who also served as the president of the union's local chapter. Because there exist no genuine issues of material fact with regard to the issues preserved for review,[1] we affirm the summary judgment of dismissal, but modify the analysis offered by the court of appeals.

Plaintiff Marianne Bohl was a special education bus driver for the Bemidji school district, Independent School District No. 31, from May 15, 1986 to October 29, 1992. As a school district employee, she was a member of defendants Minnesota School Employees'

Association Service Employees International Union, AFL–CIO, CLC Local 1980 (MSEA) and the local Bemidji chapter of the union (Local).[2] Defendant, Kenneth Stevens, another special education bus driver for the school district, was president of the local union.

This action appears to be the consequence of a poor working relationship between Bohl and Stevens. For example, shortly after Bohl commenced her employment, she had been assigned to ride with Stevens on two occasions; later she reported his allegedly unsafe driving to Larry Bahls, the school district transportation and safety coordinator, and to Doyle Tomhave, the school district transportation coordinator. Although, in response to the reports, Tomhave spoke with Stevens regarding the incidents, it does not appear that any further action was taken.

Several years prior to the events at issue, Tomhave delegated to Stevens Bahls' task of assigning the bus routes for special education students. While Stevens seems to have discharged that responsibility for the most part without incident, on September 2, 1992, he unilaterally reduced Bohl's route hours from 8 to 6 and, at the same time, reduced hours of other bus drivers.[3] When Bohl complained to Tomhave, he explained the reduction as a cost-saving measure and an implementation of the seniority system, but then increased her hours to 7½ to reflect her level of seniority among her group.

On September 15, 1992, Bohl complained to the school district human rights office about the "turmoil" associated with her claim of unfair scheduling and also provided anecdotal information to substantiate her claims of harassment and assault by Stevens and other union members. The school district investigated these complaints but concluded

1. Plaintiff's counsel conceded at oral argument that several of the claims abated at Bohl's death.

2. MSEA was the exclusive bargaining agent for the school district's drivers, mechanics, and non-supervisory employees, pursuant to the Public Employment Labor Relations Act (PELRA), Minn.Stat. ch. 179A (1994). In this capacity, MSEA and the district negotiated a collective bargaining agreement (CBA) which set out the terms and conditions of employment, including hours of work, compensation, seniority, and

grievance procedures, but reserved to the school district matters of inherent managerial functions, such as the organizational structure and selection, direction and number of personnel.

3. Pursuant to the CBA, the transportation coordinator had the authority to decrease hours during the employment year to a point within a certain time spread, which for Bohl's pay level was between 6 and 6½ hours.

there was insufficient evidence produced from other employees, parents and administrators to substantiate the allegations. However, in an effort to improve working relations, the school district made a number of recommendations, including that bus routes be assigned by the transportation coordinator or his assistant and not by another driver.

In October 1992, Bohl requested that the union investigate her complaints against Stevens and the union. Following an independent investigation into the district's conduct, the MSEA field representative concluded that the delegation of bus route assignment authority to Stevens did not constitute a violation of the CBA and that no grievance existed. It confined its investigation to the district's conduct because it had concluded that the CBA was not implicated by the complaints against Stevens. As a result, Bohl filed a written complaint against Stevens on October 13, 1992 with the MSEA president, in accordance with the union constitution and its bylaws.[4] The MSEA president forwarded the complaint to the executive director for an investigation and report to the MSEA board of directors. The executive director made no investigation but, instead, simply presented the complaint to the board and it took no further action.

At the end of October 1992, Bohl arranged for a transfer to a custodial position within the school district.[5] The union did not participate in the transfer and had no authority to prevent it. One week later, Bohl sustained a back injury compensable under the Workers' Compensation Act and never returned to work.

On March 15, 1993, Bohl filed a discrimination charge against the school district with the Minnesota Department of Human Rights.

In April 1993, Bohl commenced this action against MSEA, Local and Kenneth Stevens in both his individual and official capacities, alleging nineteen counts, including whistleblower claims and claims pursuant to 42 U.S.C. § 1983 (1994).[6] The trial court granted the defendants' motion for a more definite statement and Bohl amended her complaint to allege twelve counts against all or only some of the defendants. Against MSEA, she alleged counts of breach of duty of fair representation, breach of contract, discrimination in violation of Minn.Stat. § 363.03, tortious interference with her employment contract with the school district and conspiracy to tortiously interfere with the employment contract; against Local, she alleged breach of contract, discrimination, tortious interference, conspiracy to interfere with her employment contract and with her contractual rights as a member of the union, reprisal in violation of Minn.Stat. § 363.03, aiding and abetting reprisal, and intentional and negligent infliction of emotional distress; against Stevens in his individual and official capacity, she alleged discrimination, tortious interference, conspiracy to tortiously interfere, both with regard to her employment contract and the union contract, and assault; and against Stevens in his official capacity only, she alleged reprisal, aiding and abetting reprisal, and negligent and intentional infliction of emotional distress.

Concluding that Bohl had failed to establish a *prima facie* case on any of the claims, on January 4, 1995 the trial court entered summary judgment of dismissal of all twelve counts. A month later, on February 2, 1995, Bohl died from causes unrelated to this litigation. Judith Lipka, special administrator of Bohl's estate, was substituted as plaintiff

---

4. Bohl filed her complaint pursuant to Article III, Section 4 of the MSEA constitution which provides that any member of the union may file with the union president a written charge of alleged conduct by another member that is "detrimental" to the union. The president is to review any such charge for sufficiency and forward the charge to the executive director who is to investigate whether the charges warrant disciplinary proceedings and prepare a confidential report for the board of directors. If the board of directors finds reasonable cause to believe the charges are true, then a hearing is held to determine whether the alleged conduct did in fact occur.

5. According to Bohl, she decided to transfer out of the "bus garage" because of the "hostile working environment," the "things" happening there that were making her life "miserable * * * being shunned by people."

6. The plaintiff did not name the school district as a defendant in this action.

in this lawsuit over defendants' assertions that Bohl's causes of action abated on her death. The trial court declined to consider issues relating to the survival of claims. Lipka appealed from the judgment, and defendants noticed review of Lipka's substitution as plaintiff, claiming all causes of action had abated.

On appeal, rather than confining its review to the summary judgment, the court of appeals inquired first whether the claims survived Bohl's death, and concluded that: (1) the claims for breach of contract, tortious interference with contract, and unfair representation did not abate upon Bohl's death; but (2) the claims for assault, emotional distress, and violation of the Minnesota Human Rights Act would abate unless special damages were pleaded and proved. The court then affirmed the judgment of dismissal of the surviving claims for Bohl's failure to make a *prima facie* showing. *Lipka v. Minnesota School Employees Association, Local 1980,* 537 N.W.2d 624 (Minn.App.1995).

For our purposes, *Lipka* has conceded that the assault and emotional distress claims have abated and our review thus focuses on the remaining claims of unfair representation, breach of contract based on the union constitution, tortious interference with contractual relations, and reprisal.

■ Actions predicated on claims of breach of duty of fair representation normally require review of the substantive positions taken and policies pursued by a union in

negotiation of a collective bargaining agreement and in its implementation of the grievance machinery. *Vaca v. Sipes,* 386 U.S. 171, 181, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Eisen v. State, Dep't of Public Welfare,* 352 N.W.2d 731 (Minn.1984).[7] Here, the trial court properly concluded that Bohl had no grievable issue, because she had not alleged any violation of the CBA. Simply stated, Bohl did not make a *prima facie* case that MSEA breached its duty to fairly represent her in enforcing the CBA.

■ Bohl also asserted breach of contract and tortious interference with contractual relations claims based on the union constitution, but as the trial court concluded, Bohl was not the beneficiary of the union constitutional provision on which her claims were grounded.[8] Bohl's claims for tortious interference with her contractual relations with the school district were based on the collective bargaining agreement, which, as already indicated, had not been violated. Finally, Bohl alleged that the union and Stevens, in his official capacity, engaged in sexual discrimination and reprisal in violation of Minn. Stat. § 363.03, subds. 1(1) and 7(1), but as the trial court concluded, the claims against the union failed because the alleged misconduct did not implicate union activity.

Inasmuch as we agree with the trial court's conclusions that Bohl failed to make a *prima*

**7.** As explained in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), "[i]t has long been established that an individual employee may bring suit against his employer for breach of a collective-bargaining agreement. * * * Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement. * * * In *Vaca* and *Hines,* however, [the Supreme Court] recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* at 163–64, 103 S.Ct. at 2290 (citations omitted).

**8.** In *Wooddell v. International Brotherhood of Electrical Workers, Local 71,* 502 U.S. 93, 101, 112 S.Ct. 494, 500, 116 L.Ed.2d 419 (1991), the Supreme Court said "union constitutions are an important form of contract between labor organizations. Members of a collective-bargaining unit are often the beneficiaries of such interunion contracts, and when they are, they * * * may bring suit * * *." The provisions of the MSEA constitution involved here allow a union member to complain of another member's misconduct that is "detrimental" to the union, and if it is determined that the charged misconduct occurred, the remedies are discipline, suspension or expulsion of the guilty member from the union. Bohl alleged a constructive discharge, but factors other than union inaction appear to have caused the alleged hostile work environment.

*facie* showing with regard to her remaining claims, we conclude that it is not necessary to address the applicability of Minn.Stat. § 573.01 (1994), the survival statute, to any of those remaining claims. The primary test for determining whether a cause of action survives or abates is the nature of the claimed damages [9]—a matter of some complexity when the action arises out of an alleged civil rights violation. Here, the difficulty in ascertaining the true nature of the damages claimed was intensified by the plaintiff's persistent blending of the various theories on which she sought recovery. Moreover, judicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us. To issue an opinion deciding issues unnecessary to resolution of the controversy in question is to invite litigants to demand a ruling on their chosen legal theory—in short to give litigants the power to exact advisory opinions. This we decline to do.

Accordingly, we refrain from expressing any opinion on either the abatement or the survival of any of the claims remaining after the abatement of the assault and emotional distress claims had been conceded.

Affirmed.

9. *Fowlie v. First Minneapolis Trust Co.,* 184 Minn. 82, 84–85, 237 N.W. 846, 847 (1931). *See also Beaudry v. State Farm Mut. Auto. Ins. Co.,* 518 N.W.2d 11, 13 (Minn.1994), and *Webber v. St. Paul City Ry. Co.,* 97 F. 140, 145 (8th Cir. 1899).