James **MIDDLETON, deceased employee, by Arlene MID-DLETON, Relator,**

v.

**NORTHWEST AIRLINES and Kemper National Insurance Companies, Respondents.**

No. C6–98–2418.

Supreme Court of Minnesota.

Oct. 14, 1999.

John H. Guthmann, Wayne P. Dordell, Hansen, Dordell, Bradt, Odlaug & Bradt, P.L.L.P., St. Paul, for Relator.

Michael D. Aafedt, Aafedt, Forde, Gray & Monson, P.A., Minneapolis, for Respondents.

## OPINION

LANCASTER, Justice.

By writ of certiorari, relator Arlene Middleton seeks review of a decision of the Workers' Compensation Court of Appeals (WCCA) affirming the denial of her claim for death benefits following her husband's suicide. The WCCA concluded that the suicide was not compensable because it was not the result of a work-related physical injury. We reverse and remand the matter to the WCCA for further proceedings.

James Middleton began working for Northwest Airlines as an aircraft mechanic in 1958. At some point in 1990, Middleton began working in the tubing department, fabricating tubing that carried hydraulic fluid, engine oil, oxygen, and other materials throughout an aircraft. The work required attention to detail and precision.

Beginning in 1993, certain changes took place in the department that Middleton felt compromised the department's work and ultimately aircraft safety. Relator argued before the compensation judge that Middleton suffered from increased work-related stress as a result of certain changes that took place in the tubing department: (1) Northwest management's decision to change the procedure used to inspect tubing before its use on aircraft; (2) Middleton's ascent to the position of most senior employee in the tubing department following the retirement of another employee; and (3) the development of a large backlog of work orders for tubing that was the result of a one-time retrofit-

ting of DC–9 aircraft. In early April 1994, it became apparent to family and friends that Middleton's life had become dominated by mental suffering, which he attributed to work-related stress. On April 21, 1994, Middleton went to see his family doctor for complaints of severe stomach pain and an inability to sleep. Middleton's physician prescribed both anti-anxiety and anti-depressant medications for Middleton's symptoms. Middleton's physician also referred Middleton to a psychologist, who diagnosed a situational depression.

By June 1994, Middleton's condition had deteriorated significantly. His friends and co-employees began to notice that Middleton was undergoing a dramatic weight loss. They also observed that Middleton's personality had changed — he had become much more withdrawn. Middleton's wife noted that by this time her husband had become "extremely * * * paranoid or psychotic." Middleton confided to his wife that he had contemplated suicide. On June 21, 1994, after Middleton reported his suicidal thoughts to his family physician, the physician placed him on indefinite medical leave. The next day Middleton visited the psychologist who concluded, after neuropsychological testing, that Middleton's depression had worsened. The psychologist noted that Middleton was "not in jeopardy of self harm or harm to others. Test findings, however are extremely disconcerting * * *." Middleton underwent a magnetic resonance imaging (MRI) brain scan on June 27. The MRI could not be completed because Middleton complained about the noise coming from the MRI equipment, but a computed tomography (CT) brain scan indicated normal results. On the morning of June 30, 1994, Middleton went down into the cellar of his home and committed suicide by slicing his wrists with a knife. By the time his wife discovered him, he had already lost so much blood that paramedics were unable to resuscitate him.

Middleton's wife sought workers' compensation death benefits. Over a three-day hearing before a workers' compensation judge, friends, family members, and co-employees described Middleton's descent into depression, and vocational experts commented on the nature and amount of stress that Middleton encountered at work. Additionally, expert medical evidence established that Middleton had a major depressive disorder that led to his suicide. With regard to the psychological impact of Middleton's work stress, Dr. John Rauenhorst, psychiatric consultant for relator, opined that work-related stress (or at least Middleton's perception of his job) was the likely cause of Middleton's major depressive disorder that overrode his rational thinking and judgment. Michael Richardson, psychologist, and Dr. Thomas McPartlin, neurologist, also believed that work stress was a substantial contributing cause of Middleton's depression.

Dr. Keith Hartman, respondent's psychiatric consultant, agreed that Middleton's suicide was the result of a major depressive disorder. However, Dr. Hartman said that stress does not cause depressive disorders but, rather, depressive orders cause stress. Dr. Hartman explained that people frequently use work stress as an excuse for their preexisting depressive disorders. He conceded, however, that stress could cause depression and that the workplace can be a substantial factor that triggers a major depressive disorder.

The compensation judge found that Middleton's job stress caused his major depressive disorder but denied the relator's claim, concluding the evidence failed to establish legal causation: that the stress of Middleton's employment was beyond the ordinary day-to-day stress to which all employees are exposed. On appeal, the WCCA affirmed, concluding that although the evidence supported the determination as to medical causation (that job stress precipitated the major depressive disorder), the claim was nevertheless properly denied because the suicide was the result of a noncompensable mental injury, citing

*Lockwood v. Independent School Dist. No. 877,* 312 N.W.2d 924, 926 (Minn.1981), as controlling authority. The WCCA did not reach the issue of legal causation.

In *Lockwood* we held that in the absence of an indication from the legislature that it intended to impose liability on employers for such injuries, the Workers' Compensation Act did not cover employees who were mentally disabled by employment-related stress. 312 N.W.2d at 927. The respondents argue that where suicide arises out of a mental trauma that would not, under *Lockwood,* be independently compensable, the holding of *Lockwood* demands that the death not be compensable either. We have carefully examined *Lockwood* to determine whether its holding is so broad. In *Lockwood* we observed that the statute evidenced no intent to cover the mental injury itself (in that case one psychiatrist diagnosed the mental disability as manic-depressive disorder, and another psychiatrist diagnosed it as a schizophrenic-type reaction). In the end, we leave undisturbed our holding in *Lockwood,* but are unpersuaded that it is conclusive on the issue of whether the statute contemplates that suicides will be treated differently from "work-related stress without physical trauma." *Lockwood,* 312 N.W.2d at 926.[1]

For analytical convenience, Larson[2] places workers' compensation mental injury claims into three groups: (1) cases in which mental stimulus produces physical injury; (2) cases in which physical stimulus produces mental injury; and (3) cases in which the mental stimulus produces the mental injury. We have observed that, generally speaking, in Minnesota injuries in the first two categories are compensable; but injuries in the third category are not. *See, e.g., Lockwood,* 312 N.W.2d at 926; *Johnson v. Paul's Auto & Truck Sales,* 409 N.W.2d 506, 508 (Minn.1987). Death by suicide does not fall neatly into either category one or category three. On the one hand, the mental stimulus does not directly cause the physical injury (in this case, death), because the stress-induced mental derangement intervenes. On the other hand, stress-induced suicide cannot simply be classified a mental injury produced by mental stimulus, as death is not merely a state of mind. *See, e.g., Eaton v. State of Minnesota,* 39 Minn. Workers' Comp. Dec. 94, 98 (1986) ("[The worker] is now more than simply 'mentally disabled' by the work-related stress. Clearly he is also physically disabled as a result of his death * * *"). Larson's grouping provides useful analytical guidance, but it does not answer the question presented by this case. For that we turn to our case law and legislative history.

Minnesota Statutes § 176.021, subd. 1 (1994), provides that employers are not liable for compensation when an injury is self-inflicted or is proximately caused by intoxication. In *Anderson v. Armour & Co.,* 257 Minn. 281, 101 N.W.2d 435 (Minn. 1960), we recognized as compensable a death by suicide resulting from a psychotic depression precipitated by a work-related incident. Anderson, a truck driver, became despondent after he accidentally struck a pedestrian on a highway. 257 Minn. at 282, 101 N.W.2d at 436. A week later, Anderson's despondency drove him to suicide. 257 Minn. at 284, 101 N.W.2d at 438. We held that Anderson's death was compensable under the workers' compensation laws because an employee's injuries could not be said to be "intentionally self-inflicted" if the employee had "killed himself while possessed of an uncontrollable or irresistible impulse or while in a delirium of frenzy without rational knowledge of the physical consequences of his act." 257 Minn. at 289, 101 N.W.2d at 440 (quoting 5 Schneider, *Workmen's Compensation* § 1411(e) (3d ed.)); *see also Leh-*

---

**1.** The WCCA both has (*Eaton v. State,* 39 Minn. Workers' Comp. Dec. 94, 98 (1986)) and has not (the instant case) allowed suicide claims.

**2.** *See* 3 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Laws,* § 56.01 (1999).

*man v. A.V. Winterer Co.,* 272 Minn. 79, 82, 136 N.W.2d 649, 651 (1965) (applying *Anderson*).

In 1967, the Minnesota legislature amended Minn.Stat. § 176.021, subd. 1, so that it specifically excluded coverage for deaths by suicide. Act of June 2, 1967, ch. 40, § 3, 1967 Ex.Sess. Laws, 2227 (inserting clause stating that "suicides are not compensable"). However, the language precluding coverage of suicide deaths was removed by the legislature in 1973. Underscoring its intent to bring suicide within the coverage of the statute, the legislature in 1973 also amended the clause precluding employer liability when an employee's "injury or death was intentionally self-inflicted" by removing the words "or death." Act of May 23, 1973, ch. 623, § 1, 1973 Minn. Laws 1491.[3]

Thereafter, in *Meils by Meils v. Northwestern Bell Telephone Co.,* 355 N.W.2d 710 (Minn.1984), we held to be compensable a suicide death that resulted from depression precipitated by a work-related back injury. In so doing we rejected the *Anderson* "uncontrollable impulse or delir- ium of frenzy" test for causation, replacing the causal test with "the familiar common law test of proximate cause and superseding cause." *Id.* at 714. *Meils* specified that death by suicide is compensable if "a work-related injury and its consequences, such as extreme pain and despair, directly cause a mental derangement of such severity that it overrides normal or rational judgment." *Id.* at 715. The burden is on the claimant to establish by substantial evidence the unbroken chain of causation between the work-related injury, the mental derangement, and the suicide. *Id.*

In *Meils*, a compensable physical injury precipitated the mental derangement, but that fact was not central to disposition of the primary issue: the causal test for compensability of a subsequent injury. We are persuaded that imposing such a requirement would be inconsistent with legislative history and prior case law concerning suicide. In the absence of legislative directive to the contrary, we perceive death by suicide to be analogous to other subsequent physical injuries. *See, e.g., Aker v. State Dep't of Natural Resources,*

---

3. Before 1967, Minn.Stat. § 176.021, subd. 1, read as follows:

Except as excluded by this chapter all employers and employees are subject to the provisions of this chapter. Every such employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of his employee arising out of and in the course of employment without regard to the question of negligence, unless the injury or death was intentionally self-inflicted or when the intoxication of the employee is the proximate cause of the injury. The burden of proof of that fact is upon the employer.

Minn.Stat. § 176.021, subd. 1 (1965).

From 1967 to 1973, it read:

Except as excluded by this chapter all employers and employees are subject to the provisions of this chapter. Every such employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of his employee arising out of and in the course of employment without regard to the question of negligence, unless the injury or death was intentionally self-inflicted or when the intoxication of the employee is the proximate cause of the injury; *suicides are not compensable.* The burden of proof of such fact is upon the employer.

Minn.Stat. § 176.021, subd. 1 (1971) (emphasis added).

From 1973 to the present, the statute has read substantially as follows:

Except as excluded by this chapter all employers and employees are subject to the provisions of this chapter.

Every employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence. The burden of proof of these facts is upon the employee.

If the injury was intentionally self-inflicted or the intoxication of the employee is the proximate cause of the injury, then the employer is not liable for compensation. The burden of proof of these facts is upon the employer.

Minn.Stat. § 176.021, subd. 1 (1998).

282 N.W.2d 533 (Minn.1979) (game warden's heart attack caused by emotional stress of removing decomposed bodies from Boundary Waters Canoe Area held compensable); *Egeland v. City of Minneapolis,* 344 N.W.2d 597 (Minn.1984) (police officer's ulcer aggravated by chronic depression caused by work-related emotional stress held compensable). Compensability, of course, depends on whether the work-related stress can be proven to be both the medical and the legal cause of the employee's suicide. *Egeland,* 344 N.W.2d at 603. We therefore reverse the WCCA's determination that a suicide may never be compensable unless it stems from a compensable physical injury.

Legal causation was raised, but not reached, by the WCCA in light of its disposition. Given the complexity of the issues involved in determining whether Middleton's suicide was *legally* caused by his employment, a remand to the WCCA is appropriate. *See Felton v. Anton Chevrolet,* 513 N.W.2d 457, 459 (Minn.1994) (remanding case to WCCA for consideration of remaining issues the WCCA had not reached earlier after disposing of case on another issue). Remand will allow the WCCA, which has significant knowledge and expertise in assessing causation issues, to consider an appropriate framework for determining legal causation in instances of stress-induced employee suicide.

Relator is awarded $800 in attorney fees.

Reversed and remanded.

## PAUL H. ANDERSON, J. (dissenting).

I respectfully dissent because, in reaching the question of the compensability of suicide, the majority provides a solution for a legal issue not properly before our court. The Workers' Compensation Court of Appeals essentially placed the cart before the horse by ruling that "employer[s] and insurer[s] do not have primary liability for [an] employee's major depressive disorder and suicide" before addressing the factual issue of whether James Middelton's suicide stemmed from a work-related injury. The majority, in its zeal to correct the WCCA's legal conclusion, exacerbates the WCCA's error by emulating it.

It is clear from the record that petitioner failed to demonstrate that Middleton suffered a work-related injury. In order to show that there has been a work-related injury, the petitioner must prove that Middleton experienced extreme work-related stress that was "beyond the ordinary day-to-day stress to which all employees are exposed." *Egeland v. City of Minneapolis,* 344 N.W.2d 597, 603 (Minn.1984). But the compensation judge found exactly the opposite. Specifically, at finding No. 38, the judge stated: "(B)ased upon a preponderance of the evidence, the employee was not subjected to stress at work beyond the day to day stress to which all employees are subjected."

This factual finding was challenged by the petitioner before the WCCA, which declined to address this dispositive issue after prematurely ruling on the compensability of suicide. The majority now commits the same error in its attempt to correct what it perceives to be an erroneous legal conclusion by the WCCA. In doing so, the majority ignores the fundamental flaw in its approach: on the facts presented in this case, the legal issue of the compensability of suicide resulting from a compensable mental injury simply is not before the court. The only way the majority can legitimately reach this issue is to first reverse the finding of the compensation judge. I do not believe that on this record they can do so.

Neither our court nor the WCCA can disregard a compensation judge's findings and substitute our own unless we conclude the findings of the compensation judge are clearly erroneous and unsupported by substantial evidence in the record. *See generally* Minn.Stat. § 176 176.421 (1998). The findings of the judge are to be affirmed "if, in the context of the record as a whole [the findings] are supported by evidence that a

reasonable mind might accept as adequate." *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 59 (Minn.1984). In evaluating the record, a reviewing court must give due weight to the opportunity of the compensation judge to evaluate the credibility of the witnesses. *See id.* Conflicts in medical testimony are to be resolved by the compensation judge as trier of fact. *Krotzer v. Browning–Ferris/Woodlake Sanitation Service*, 459 N.W.2d 509, 512 (Minn.1990). Although there was conflicting evidence on the factual issue of whether Middleton's injury was work-related, the compensation judge found that Middleton was not subjected to work-related stress beyond the day-to-day stress to which all employees are subjected. The judge's finding is adequately supported by the evidence in the record. As such, I am perplexed by the majority's patchwork remand of the factual issue after reversing the WCCA's legal conclusion. The only purpose I perceive in such a remand would be to hand off to the WCCA the distasteful job of denying workers' compensation benefits to Middleton's widow.

This court, indeed any appellate court, should address only those legal questions that are properly presented by the facts in a particular matter. *See Lipka v. Minnesota School Employees Ass'n, Local 1980*, 550 N.W.2d 618, 622 (Minn.1996) (noting that for the court to issue opinions on issues not presented by the facts is to issue impermissible "advisory" opinions). To do otherwise strays from our proper role in the judicial process and exceeds our legitimate authority. *Id.* This is especially important when dealing with an area of law that is wholly created by statute. *See Stabs v. City of Tower*, 229 Minn. 552, 565–66, 40 N.W.2d 362, 371 (Minn.1949) (stating that the court should not impose rules on a well-regulated area of law that the legislature did not impose when it considered the matter).

Notwithstanding my strong objection to the majority's decision to address the issue of compensability of a suicide caused by a compensable work-related injury, I do share some of the majority's concern at leaving the WCCA's decision undisturbed. Accordingly, I would affirm the factual finding of the compensation judge that Middleton's injury was not a work-related injury, but would reverse without comment the holding of the WCCA on the compensability of a suicide resulting from a work-related mental injury. I would leave the latter question for another day when the facts presented allow us to make a considered and appropriate ruling on such a far-reaching policy decision.

PAGE, J. (dissenting).

I join the dissent of Justice Paul H. Anderson.

STRINGER, J.

I respectfully dissent because I agree with Justice Anderson that there was adequate evidence to support the findings of the compensation judge that Middleton was not subjected to work-related stress beyond that typically found in a work environment. The WCCA erred in disregarding this finding.

I further dissent because if denying coverage for a suicide unrelated to a compensable work-related injury is inconsistent with legislative history, it has been so for almost 20 years since *Lockwood v. Independent School Dist. No. 877*, 312 N.W.2d 924 (Minn.1981), holding that a disabling mental injury which was a result of job-related mental stress without an accompanying physical trauma was not compensable. *Id.* at 926. We held so in large part because we were unable to determine whether the legislature intended such an injury to be covered. *Id.* We stated:

> In the absence of proof that the legislature considered the far-reaching ramifications of extending workers' compensation coverage to employees who are mentally disabled by employment-related stress [without physical trauma], we decline to construe the Workers' Com-

pensation Act in a manner probably not intended by that body. * * * [T]he issue raised in this case involves a policy determination which we believe should be presented to the legislature as the appropriate policy-making body. If it wishes to extend workers' compensation coverage to mental disability caused by work-related mental stress without physical trauma, it is free to articulate that intent clearly. In the absence of a clearly expressed legislative intent on the issue, however, we will not hold such disability to be compensable.

*Id.* at 927. While the majority claims it is leaving *Lockwood* untouched, it is not, as *Lockwood* denied workers' compensation coverage to employees mentally disabled by employment-related stress – precisely the sequence that led to Middleton's tragic death. The majority's holding that now awards coverage clearly overrules *Lockwood*, and takes a step we were unwilling to take in *Lockwood* because it had "far-reaching ramifications" including, among other concerns, the "major policy determination" of "[r]ealocating the costs resulting from stress-related disability between health insurance and worker's compensation insurance." *Id.*

Nothing in our more recent caselaw suggests that a suicide caused by mental illness without an initial work-related physical injury should be held compensable. In *Meils by Meils v. Northwestern Bell Telephone Co.*, 355 N.W.2d 710 (Minn.1984), we stated the general rule that "a subsequent injury which is the direct and natural consequence of a *compensable injury* is also compensable." *Id.* at 714 (emphasis added). The suicide in *Meils* was thus compensable because a compensable physical work-related injury was a contributing cause. *Id.* at 715.

At the root of our worker's compensation scheme is the principle that self-inflicted injuries are not compensable. *See* Minn.Stat. § 176.021, subd. 1 (1998). Although the majority makes much of the legislature's withdrawal of its explicit deni-

al of compensation for suicides in 1973, we cannot read into this amendment a legislative intent that a suicide caused by a non-compensable mental injury should be treated differently than any less drastic self-induced injury, particularly since the legislature has not amended the relevant language since our 1981 holding in *Lockwood* denying coverage "[i]n the absence of a clearly expressed legislative intent" for a mental disability caused by workplace stress. *Id.* at 927. Even the remedial nature of the Workers' Compensation Act "does not justify a construction which gives to statutory language an application and meaning not intended by the lawmakers." *Gale v. Comm'r of Taxation*, 228 Minn. 345, 350, 37 N.W.2d 711, 715, (Minn. 1949).

The mental illness which caused Middleton's suicide clearly fits within Larson's third category of claims: a mental injury caused by mental stimulus.[1] As these injuries have never been compensable in Minnesota, the majority now extending coverage by carving out an exception for suicide not only creates new law, it creates an anomaly where a completed act of suicide is compensable but injuries from an attempted suicide are not. Surely the legislature did not intend such a paradox.

Eliminating the requirement of an initial compensable injury represents a fundamental change in the law and trespasses on what has traditionally been a legislative function. Because *Lockwood* has been the law for almost 20 years and the legislature has apparently seen no reason to change it, the conclusion is compelling that it did not intend the coverage the majority now extends. I would affirm the decision of the Workers' Compensation Court of Appeals denying compensation.

---

**1.** *See* 3 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 5601 (1999).