Bryan K. MARTIN, Employee,

v.

MORRISON TRUCKING,
INC., Respondent,

and

Travelers Insurance Company, Relator,

and

Minnesota Department of Labor and Industry, Special Claims Section, f/k/a Special Compensation Fund, Respondent.

No. A10–0446.

Supreme Court of Minnesota.

Aug. 3, 2011.

Thomas L. Cummings, Jardine, Logan & O'Brien, P.L.L.P, Lake Elmo, MN, for respondent Morrison Trucking, Inc.

Robert E. Kuderer, Stacey A. Molde, Johnson & Condon, P.A., Minneapolis, MN, for relator.

Lori Swanson, Attorney General, Rory H. Foley, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Department of Labor and Industry, Special Claims Section.

## OPINION

ANDERSON, G. BARRY, Justice.

We review on certiorari a decision of the Workers' Compensation Court of Appeals (WCCA) reversing a compensation judge's finding that the employer in this case was not insured for Minnesota workers' compensation liability. We also review the decision of the WCCA to vacate the compensation judge's order directing the employer to reimburse and to pay a penalty to the Minnesota Department of Labor and Industry, Special Claims Section. Because the WCCA did not have jurisdiction to declare an unambiguous exclusion in the employer's insurance policy to be invalid and unenforceable, we reverse and reinstate the compensation judge's findings and order.

Bryan K. Martin is a Minnesota resident who worked as a truck driver for Wisconsin-based Morrison Trucking, Inc. On July 31, 2002, while working for Morrison Trucking, Martin injured his ankle in an on-the-job accident in Minnesota. Martin's injury resulted in two workers' compensation benefit claims. Because Morrison Trucking was based in Wisconsin, Martin applied for Wisconsin workers' compensation benefits under Wisconsin law. Because Martin was hurt in Minnesota, he also applied for Minnesota workers' compensation benefits.[1]

At the time of Martin's injury, Travelers Insurance Co. (Travelers) insured Morrison Trucking for Wisconsin workers' compensation liability through the Wisconsin Workers' Compensation Insurance Pool. Travelers covered the Wisconsin benefits paid to Martin but denied the claim for Minnesota benefits. Travelers based its denial of Minnesota benefits on an exclusion of Minnesota coverage in Morrison Trucking's workers' compensation insurance policy. Martin then filed a claim for Minnesota benefits with the Minnesota Department of Labor and Industry, Special Claims Section (SCS),[2] which pays benefits to injured workers on behalf of uninsured employers.

The SCS and Martin settled Martin's claim, and an award for $67,500 was filed on February 7, 2007. The SCS continued to pursue a petition for reimbursement it had filed against Morrison Trucking before the settlement with Martin. Morrison Trucking, for its part, had joined Travelers to the action, also before the SCS settled with Martin. Morrison Trucking asserted that Travelers was obligated to cover any

---

1. Under Minnesota law, any Minnesota benefits awarded to Martin were subject to being reduced by the amount already paid by Wisconsin, entitling Martin to collect the differ-

ence. *See Stolpa v. Swanson Heavy Moving Co.,* 315 N.W.2d 615, 617–18 (Minn.1982).

2. The SCS was known as the Special Compensation Fund when Martin filed his claim.

Minnesota liability because the "purported exclusion of [Minnesota] coverage" was neither valid nor effective. On April 25, 2008, the Office of Administrative Hearings, Workers' Compensation Division, found that Morrison Trucking was uninsured for Minnesota workers' compensation insurance coverage and ordered Morrison Trucking to reimburse the SCS for the amount paid to Martin, plus a 65% penalty pursuant to Minn.Stat. § 176.183, subd. 2 (2010).

In her memorandum supporting the findings and order against Morrison Trucking, the compensation judge discussed the reasonable expectations doctrine, which provides that when a contract for insurance is construed, "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 277 (Minn.1985). The compensation judge concluded that the reasonable expectations doctrine did not invalidate the exclusion of Minnesota coverage at issue because the exclusion was "clear, unambiguous, and prominent."

The compensation judge stated that she was "not unmindful of the fact" that Morrison Trucking had a workers' compensation insurance policy in effect for the date of Martin's injury, but she noted that while Morrison Trucking president Thomas Morrison testified that he thought he had secured Minnesota coverage, he also testified that he never read the Travelers policy. The compensation judge noted that Morrison's testimony and that of the agent who sold the Travelers policy indicated a "misunderstanding and/or miscommunication" about the policy, but concluded that she "does not have jurisdiction over a cause of action between Mr. Morrison as president of Morrison Trucking, Inc. and his insurance agent."

Morrison Trucking appealed to the WCCA, which reversed the compensation judge after concluding that Morrison Trucking was entitled to coverage from Travelers under the reasonable expectations doctrine. *Martin v. Morrison Trucking, Inc.* (*Martin I* ), No. WC08–168, 2008 WL 4886653, at *10 (Minn. WCCA Oct. 29, 2008). On review on certiorari, we reversed by order and remanded for reconsideration in light of *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41 (Minn.2008). *Martin v. Morrison Trucking, Inc.*, 765 N.W.2d 639, 639 (Minn.2009). In *Carlson*, we made clear that while ambiguity is not a "rigid requirement" for the reasonable expectations doctrine, "in no case since *Atwater* have we used the doctrine to provide coverage in contravention of unambiguous policy terms." 749 N.W.2d at 48, 49. Moreover, in *Carlson*, we reaffirmed that the reasonable expectations doctrine "does not excuse an insured from reading the policy. . . . [T]he insurer must communicate coverage and exclusions accurately and clearly, and the insured's expectations must be reasonable under the circumstances." *Id.* at 48.

On remand, the WCCA once again reversed the compensation judge. *Martin v. Morrison Trucking, Inc.* (*Martin II* ), No. WC09–4970, 2010 WL 677240, at *16 (Minn. WCCA Feb. 11, 2010). In its decision, the WCCA described our holding in *Carlson*, including that we expressly declined to " 'expand the doctrine of reasonable expectations beyond its current use as a tool for resolving ambiguity and for correcting extreme situations.' " *Id.* at *3–4 (citing *Carlson*, 749 N.W.2d at 49). Given *Carlson*, the WCCA declared itself "reluctant to apply" the reasonable expectations doctrine again. *Id.* at *4. The WCCA

stated: "In this case, whether it could be said that the endorsement excluding liability was unreasonably obscure or not, *the endorsement exclusion itself is not ambiguous.*" *Id.* (emphasis added). Despite having found the exclusion to be unambiguous and despite our remand to reconsider the case in light of *Carlson*, the WCCA declared that the "application of the reasonable expectations doctrine, clearly questioned by the [Minnesota] Supreme Court, is unnecessary in determining the validity of the exclusionary endorsement in this case." *Id.*

The WCCA then fashioned a remedy for this case based on its view of the purpose and policy underlying the Wisconsin Worker's Compensation Act (Wisconsin Act). *Id.* at *5–16. First, the WCCA described the "residual market" for employers required by law to have workers' compensation insurance but who are unable to obtain workers' compensation coverage through a private insurance plan. *Id.* at *4–5. The WCCA explained that residual market liability plans are "intended as a last resort." *Id.* at *5. The WCCA noted that Wisconsin law mandates that every Wisconsin employer must be insured against workers' compensation liability, and described the Wisconsin Worker's Compensation Insurance Pool (Pool) as Wisconsin's residual-market option for employers unable to find coverage or to self-insure. *Id.* (citing Wis. Stat. §§ 102.28(2)(a), 619.01 (2009–2010)). And the WCCA discussed the contractual obligations that Travelers purportedly accepted as a servicing carrier to the Pool providing coverage to Morrison Trucking. *Id.* at *7–8.

The WCCA then stated that the purpose of the mandatory coverage requirement of the Wisconsin Act, and the purpose of the Pool in relation to Wisconsin employers unable to obtain insurance through the voluntary market, "is the protection of injured workers and their employers by assuring that the employer is insured to the full extent of its liability." *Id.* at *14 (citing *Nelson v. Rothering*, 174 Wis.2d 296, 496 N.W.2d 87, 90 (1993)). The WCCA opined that the Wisconsin Act "requires a Wisconsin employer to obtain insurance, and the insurer to provide insurance, for worker's compensation liability to the full extent of the employer's liability to its employees." *Id.* at *16. The WCCA then determined that "terms in a policy of insurance that conflict with statutory requirements may be held invalid." *Id.* at *15.

Finally, despite its conclusion that the exclusion of Minnesota coverage in the Travelers policy held by Morrison Trucking was not ambiguous, *id.* at *4, the WCCA declared that

> we see no legitimate basis for Travelers' exclusion of Minnesota from coverage.... As a service carrier for the Wisconsin Pool, providing insurance coverage of last resort, Travelers was obligated to provide coverage to the employer necessary to meet its mandated responsibility of obtaining compensation insurance to cover the full extent of its liability to its employees.

*Id.* at *15. The WCCA reasoned that "[t]he exclusion of Minnesota is inconsistent with the mandatory coverage provisions of the [Wisconsin] act and is contrary to public policy. The purported exclusion is arbitrary and invalid and cannot be enforced to prevent coverage of Morrison[ ] Trucking['s] liability to the employee in Minnesota." *Id.* at *16. The WCCA reversed the finding that Morrison Trucking was not insured for liability for Minnesota workers' compensation benefits by Travelers, vacated the penalty assessment, and ordered Travelers to reimburse the SCS. *Id.*

The question for us on review is whether the WCCA had authority to decide this case on the theory it articulated. It did not.

## I.

██ Jurisdiction is a threshold question that may be raised at any time. *Dead Lake Ass'n, Inc. v. Otter Tail County,* 695 N.W.2d 129, 134 (Minn.2005). Because jurisdiction is a question of law, our review is de novo. *Hale v. Viking Trucking Co.,* 654 N.W.2d 119, 123 (Minn.2002).

██ Minnesota Statutes § 175A.01 governs the jurisdiction of the WCCA. Minn. Stat. § 175A.01, subd. 5. Under section 175A.01, subdivision 5, the jurisdiction of the WCCA is limited to "questions of law and fact arising under the workers' compensation laws of [Minnesota]" in cases appealed to the WCCA or transferred to the WCCA from the district court. *Id.* Subdivision 5 expressly states that the WCCA "shall have no jurisdiction in any case that does not arise under the workers' compensation laws of the state." *Id.* The express statutory grant, and corresponding limit, of jurisdiction to the WCCA reflects the fact that the WCCA is not a court of general jurisdiction. *See* Minn. Const. art. VI, § 3; Minn.Stat. § 484.01, subd. 1 (2010). Rather, the Legislature created the WCCA to be an independent agency within the executive branch, tasked with answering specialized questions arising under the Minnesota Workers' Compensation Act (Minnesota Act), codified at Minn.Stat. ch. 176 (2010). Minn.Stat. § 175A.01, subd. 1 (2010).

Our precedents have further described the boundaries of WCCA jurisdiction. We have construed section 175A.01, subdivision 5, not to authorize the WCCA to consider questions of law arising under the workers' compensation statutes of other states. For example, in *Hale v. Viking Trucking Co.,* 654 N.W.2d 119 (Minn.2002), we held that a Minnesota workers' compensation court lacked subject matter jurisdiction to determine whether an insurer overpaid benefits to an employee because, in order to make the determination, the compensation court needed to examine the Colorado workers' compensation laws that gave rise to the insurer's liability in the first instance. *Id.* at 124. *Hale* is not directly on point here in that the injury in *Hale* occurred in Colorado, not in Minnesota. *See id.* But we noted in *Hale* that our decision was consistent with the reasoning of the WCCA in *Rundberg v. Hirschbach Motor Lines,* 51 Minn. Workers' Comp. Dec. 193, 205–06 (WCCA), *aff'd without opinion,* 520 N.W.2d 747 (Minn. 1994). In *Rundberg,* the WCCA held that it lacked subject matter jurisdiction to order an uninsured Minnesota employer to reimburse a Nebraska insurer for payments made to a Minnesota employee hurt in California. *Id.* at 206. The WCCA said that the question before it in *Rundberg* was "whether an issue requiring the application of Nebraska law can or should be determined by a Minnesota compensation judge or this court." *Id.* at 205. The WCCA answered in the negative, stating that it has

> jurisdiction to determine "all questions of law or fact arising under the workers' compensation laws of the state." It is a jurisdiction expressly limited to this, and no more: "The workers' compensation court of appeals shall have no jurisdiction in any case that does not arise under the workers' compensation laws of the state."

*Id.* at 206 (quoting Minn.Stat. § 175A.01, subd. 5).

We also have construed 175A.01, subdivision 5, not to authorize the WCCA to construe Minnesota statutes other than the Minnesota Act. For example, in *Freeman*

*v. Armour Food Co.,* 380 N.W.2d 816 (Minn.1986), we evaluated whether the WCCA had jurisdiction to award reimbursement to a no-fault automobile insurance carrier out of a workers' compensation award. *Id.* at 819. We held that because Minn.Stat. § 176.191, subd. 3 (1984), specifically provided authority, the WCCA could order a workers' compensation insurance carrier to reimburse a no-fault insurer that made no-fault payments to a worker that are later determined to be compensable under the Minnesota Act. *Freeman,* 380 N.W.2d at 819–20. But we clearly distinguished between the *authority to order reimbursement* to the no-fault carrier and the *authority to determine liability* of the no-fault carrier to pay no-fault benefits. *Id.* at 820. In the former instance, the WCCA could order reimbursement because its authority was provided by statute; the no-fault carrier "simply presents proof of its no-fault payments" to the compensation court, which decides whether workers' compensation coverage existed for the time period at issue. *Id.* But in the latter instance, the WCCA lacked jurisdiction to determine a no-fault carrier's liability because a no-fault carrier's liability does not arise under the Minnesota Act. *Id.* As we explained: "While the compensation judge may make findings on what no-fault benefits have been paid, she lacks jurisdiction to determine a no-fault carrier's liability, *i.e.,* what payments should be, but have not been, paid." *Id.* at 820 n. 6.

We applied the reasoning of *Freeman* in *Botler v. Wagner Greenhouses,* 754 N.W.2d 665 (Minn.2008), in which we held that the Minnesota Act provides authority to a compensation judge to award costs and fees for the court appointment of a guardian and conservator but does not provide authority to order payments for services provided by and costs incurred by the guardian and conservator. *Id.* at 669–

71. The determining factor in *Botler* was the authority—and resulting jurisdiction—expressly provided by the Minnesota Act. *Id.* at 670.

Moreover, we have often evaluated WCCA jurisdiction over claims that implicate both the Minnesota Act and the Minnesota Insurance Guaranty Association Act (MIGA Act), codified at Minn. Stat. ch. 60C (2010), which provides a mechanism for "covered claims" to be paid to claimants or policyholders of insolvent insurers. Minn.Stat. § 60C.02, subd. 2. When liability turns on the interpretation and application of the Minnesota Act, we have concluded that the WCCA and the compensation court have jurisdiction. *See, e.g., Seehus v. Bor–Son Constr., Inc.,* 783 N.W.2d 144, 152 (Minn.2010). But when liability turns on the interpretation and application of the MIGA Act, we have concluded that the WCCA lacks jurisdiction. *See, e.g., Wiss v. Advance United Expressway,* 488 N.W.2d 802, 804 (Minn.1992); *Taft v. Advance United Expressways,* 464 N.W.2d 725, 727 (Minn.1991).

■ The Minnesota Act provides authority to a compensation judge to decide certain questions that arise in workers' liability claims. For example, Minn.Stat. § 176.183, subd. 2, expressly requires compensation judges to "make findings regarding the insurance status of the employer and its liability" in cases that involve the SCS and its obligation to pay benefits to employees who are injured when working for uninsured employers. *See* Minn.Stat. § 176.183, subds. 1–2. This is consistent with the general rule recognizing that workers' compensation courts and commissions have jurisdiction over insurance questions. *See* 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation* § 150.04[1] (2009) ("The general rule appears to be that,

when it is ancillary to the determination of the employee's right, the compensation commission has authority to pass upon a question relating to the insurance policy, including . . . construction of extent of coverage." (footnotes omitted)).

The WCCA described its jurisdiction in a manner similar to the general rule set out in *Larson's* in *Smith v. Integrity Plus, Inc.*, 61 Minn. Workers' Comp. Dec. 192, 206 (WCCA 2000), *aff'd without opinion*, 625 N.W.2d 142, 143 (Minn.2001). In *Integrity Plus*, the WCCA distinguished between its jurisdiction to consider whether an employer was insured against workers' compensation liability and the authority to determine other rights the employer and insurer may have under a contract that expressly incorporated the workers' compensation laws of California. *Id.* The WCCA recognized that its "jurisdiction to review and interpret this contract here goes no further than to determine that it does not provide Minnesota workers' compensation insurance. We cannot reach the question as to what other rights it affords the parties [between themselves] as our jurisdiction is limited to questions arising under" the Minnesota Act. *Id.* at 206. The WCCA noted that the contract at issue in *Integrity Plus* did not provide all-states liability insurance. *Id.* at 205–06 n. 1.

In this case, the compensation judge found that Morrison Trucking was not insured for its liability under the Minnesota Act for Martin's work-related injury. The compensation judge determined that the Travelers policy that Morrison Trucking held at the time of Martin's injury unam-

biguously excluded coverage of accidents in Minnesota. These findings are appropriate, given the mandate of section 176.183, subdivision 2. The compensation judge noted that this case implicated other causes of action, including claims between Morrison Trucking and its insurance agent, but clearly stated that it "does not have jurisdiction" over such causes of action.

■ On remand, the WCCA agreed that the exclusion of Minnesota coverage in the Travelers policy was unambiguous. *Martin II*, 2010 WL 677240, at *4. But the WCCA then reached across the border to determine whether Morrison Trucking *should* have been insured for Minnesota liability, given the principles and policy of the Wisconsin Act, and declared the unambiguous exclusion of Minnesota coverage in the Travelers policy to be invalid and unenforceable in light of the Wisconsin Act. *Id.* at *13–16. Because the WCCA has no authority to declare unambiguous language of an insurance contract to be invalid and unenforceable because of its view of another state's laws, we reverse and reinstate the April 25, 2008, findings and order of the compensation court.[3]

Reversed.

PAGE, J., took no part in the consideration or decision of this case.

ANDERSON, Paul H., Justice (concurring).

I agree with the majority's reasoning and its conclusion that the WCCA did not

---

3. We do not discount legitimate concerns raised by the facts of this case. As the compensation judge noted, Morrison Trucking held a policy from Travelers insuring against workers' compensation liability. The Travelers policy was in effect the day Martin was injured. The Travelers policy was Morrison Trucking's only option when it turned to the Wisconsin Pool to secure the insurance coverage apparently required by Wisconsin law. These facts may have given Morrison Trucking a cause of action against Travelers, in a court of general jurisdiction in Minnesota or Wisconsin—but not before an agency of the Minnesota executive branch.

have the authority to declare the unambiguous language of Morrison Trucking's policy invalid and unenforceable. But I write separately to express my concern about the validity under Wisconsin law of Travelers' policy language excluding Minnesota coverage.

In 2001, Thomas Morrison submitted an application to the Wisconsin Worker's Compensation Insurance Pool (Wisconsin Pool) on behalf of Morrison Trucking. Morrison also requested Wisconsin Limited Other States Coverage, which is intended to provide limited, temporary coverage for Wisconsin employers for injury to an employee who regularly works in Wisconsin, but happens to be in another state at the time of injury. Travelers was assigned by the Wisconsin Pool to provide Morrison Trucking's workers' compensation coverage. Travelers issued Morrison Trucking's workers' compensation policy, including the requested Other States Coverage; but Morrison Trucking's Other States Coverage specifically excluded Minnesota coverage. The WCCA concluded that this exclusion was invalid under the law governing the Wisconsin Pool. *Martin v. Morrison Trucking, Inc.,* No. WC09–4970, 2010 WL 677240, at *16 (Minn. WCCA Feb. 11, 2010).

Wisconsin law provides that: "A[n insurance] policy that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule." Wis. Stat. § 631.15(3m) (2009–10). The particular insurance at issue—workers' compensation liability through the Wisconsin Pool—is provided for by Wis. Stat. § 619.01 (2009–10), which states: "[T]he commissioner may by rule ... promulgate plans to provide such insurance coverages for [workers' compensation] that are equitably entitled to, but otherwise unable to obtain that coverage." Wis. Stat. § 619.01(1)(a). All participating insurers, including Travelers, are required to conform to these plans. Wis. Stats. § 619.01(3) ("Every participating insurer and agent shall provide to any person seeking coverages of kinds available in the plans the services prescribed in the plans...").

Rules enacted pursuant to Wis. Stat. § 619.01 provide that the "servicing carriers shall issue policies and provide service to *all* Pool risks." Wis. Comp. Rating Bd., *Wisconsin Worker's Compensation and Employers Liability Insurance Manual,* at 83 (2005) [hereinafter *Wisconsin Basic Manual* ] (emphasis added). The rules also require that the "carrier shall execute a Servicing Carrier Agreement." *Id.* The Servicing Carrier Agreement incorporates two publications issued by the Wisconsin Compensation Ratings Bureau, the body responsible for administration of the Wisconsin Pool-the *Wisconsin Handbook* and the *Wisconsin Basic Manual. See* Wis. Comp. Rating Bd., *Wisconsin Worker's Compensation Insurance Pool: Information and Procedures* (2000) [hereinafter *Wisconsin Handbook* ]; *Wisconsin Basic Manual, supra.* Travelers signed a Servicing Carrier Agreement, and is therefore subject to the provisions of the *Wisconsin Handbook* and the *Wisconsin Basic Manual.*

The *Wisconsin Handbook* provides that Other States Coverage is available from the Wisconsin Pool. The *Wisconsin Handbook* only provides for one exception:

> Wisconsin Limited Other States Coverage, if attached to the Policy, will never apply in ... any state where the employer has operations which should be covered under a policy providing worker's compensation in that state.

*Wisconsin Handbook, supra,* at 30. Nothing before us indicates whether Morrison Trucking had "operations which should be covered under a policy providing worker's

compensation" in Minnesota. *Id.* All of Morrison Trucking's trucks, buildings, and offices were located in Hager City, Wisconsin. Morrison Trucking hired employees, issued paychecks, and sent office correspondence from its Hager City office. Morrison Trucking's activities in Minnesota were limited to picking up and dropping off cargo. Travelers has cited no legal or factual authority which would establish that Morrison Trucking's Minnesota activity constituted the kind of "operations" which are referred to in the *Wisconsin Handbook* and which would justify exclusion of Minnesota coverage.

The record also suggests that Travelers excluded Minnesota coverage based on the presence of Minnesota residents on Morrison Trucking's payroll, combined with the fact that Morrison Trucking's workforce spent 95% of its time outside of Wisconsin. Travelers' underwriter testified that she performed "no investigation into the actual operations or routes that the employees of Morrison Trucking would have been traveling through." Therefore, it appears that the validity under Wisconsin law of Travelers' exclusion of Minnesota coverage in Morrison Trucking's policy is called into question and may be raised in a cause of action against Travelers in a court of general jurisdiction.

Here, the Special Claims Section brought this case in a court that did not have jurisdiction to decide the validity of Travelers' Minnesota exclusion. Further, the specific issue of the validity of the Minnesota exclusion under Wisconsin law was not raised or argued below. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988) (holding issues not raised or decided below will not be considered on appeal). Therefore, while I have concerns about the validity of Travelers' exclusion of Minnesota coverage under the law governing the Wisconsin Pool, in the procedural context

of this case, I agree with the result reached by the majority.