STATE OF MINNESOTA

IN SUPREME COURT

A24-0548
A24-0549

Workers' Compensation Court of Appeals                        Procaccini, J.

Bobby Lykins, by George Duranske,
conservator,

                        Respondent,

vs.                                                          Filed:  May 21, 2025
                                                            Office of Appellate Courts

Anderson Contracting, Inc., and
SFM Mutual Insurance Co.,

                        Relators (A24-0548).

Bobby Lykins, by John Hoscheid,
conservator,

                        Relator,

vs.

Anderson Contracting, Inc., and
SFM Mutual Insurance Co.,

                        Respondents (A24-0549).

_____

John P. Bailey, Bailey Law Offices, Ltd., Bemidji, Minnesota, for respondent Bobby Lykins, by George Duranske, conservator, and relator Bobby Lykins, by John Hoscheid, conservator.

Timothy P. Jung, Rebecca M. Scepaniak, Lind, Jensen, Sullivan & Peterson P.A., Minneapolis, Minnesota, for relators/respondents Anderson Contracting, Inc., and SFM Mutual Insurance Co.

1

David O. Nirenstein, Sydney J. Harris, Fitch Johnson Larson, P.A., Roseville, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

_____

## S Y L L A B U S

1.     The Workers' Compensation Court of Appeals has discretion under Minnesota Statutes section 176.521, subdivision 3 (2024), to set aside a workers' compensation award made upon a settlement that is not valid under section 176.521, subdivision 1(a) (2024).

2.     Substantial evidence in the employee's petition to set aside an award supported a prima facie showing that the employee was an incapacitated person when he signed agreements to settle his workers' compensation claims.

3.     Minnesota Statutes section 176.092, subdivision 3 (2024), does not apply when the employee already has a conservator.

4.     In a workers' compensation proceeding involving allegations that an employee was an incapacitated person when they signed a workers' compensation settlement, the workers' compensation courts have subject-matter jurisdiction to determine whether the employee was incapacitated.

Affirmed in part; vacated in part.

## O P I N I O N

PROCACCINI, Justice.

The parties ask us to clarify how the Workers' Compensation Court of Appeals (WCCA) should address an employee's claims that they were incapacitated and did not

2

have the benefit of a conservator when they settled their workers' compensation claims. In 2015, Bobby Lykins suffered life-changing physical and cognitive injuries due to an explosion at work. In 2017, Lykins, his employer, and his employer's insurer, agreed to a workers' compensation-related settlement. Roughly a year later, the parties agreed to an addendum to supplement the original settlement. Each time, a compensation judge approved and issued an award based on the parties' agreement. In 2022, the district court appointed a conservator for Lykins. The conservator petitioned the WCCA to set aside the settlements. The petition alleged that the settlements between the parties are invalid or should be set aside based on fraud because, when the parties signed the settlements and submitted them to the court, the attorneys failed to abide by certain statutory safeguards designed to protect the interests of incapacitated employees. *See* Minn. Stat. § 176.092, subds. 1, 3 (2024); Minn. Stat. § 176.521, subds. 1(a), 3 (2024); Minn. Stat. § 176.461 (2024).

After a hearing on the petition, the WCCA decided that further fact-finding by a compensation judge was necessary to address the issues presented. Specifically, the WCCA directed a compensation judge to determine whether Lykins appeared to be incapacitated at the time of the settlements and, if so, to refer the matter to district court for a determination of incapacity. Both parties have appealed and, for different reasons, dispute the WCCA's directions to the compensation judge. We take this opportunity to clarify the statutory requirements in a situation like this, affirming the WCCA's decision to refer the matter to a compensation judge for fact-finding but vacating the part of the WCCA's decision contemplating referral to district court.

3

**FACTS**

Bobby Lykins's life changed in September 2015, when he suffered a traumatic brain injury and other physical injuries from an explosion. His injuries required extensive medical care and supervision. Because the explosion happened while he was working, he was eligible for workers' compensation benefits. *See* Minn. Stat. § 176.021, subd. 1 (2024) ("Every employer . . . is liable to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment . . . ."). Attorney Van R. Ellig was retained to pursue workers' compensation for Lykins.

Lykins's employer, Anderson Contracting, Inc., and its insurer, SFM Mutual Insurance Co., (collectively, Anderson) admitted liability for the injuries and paid temporary total disability benefits, medical expenses, and nursing services of $5,000 per month to Lykins's wife. Ultimately, the parties disagreed about the amount of home nursing care that Lykins needed. Anderson requested that Mitchell Disability Assessments conduct a home care evaluation and prepare a report. A September 2016 report from Mitchell Disability Assessments stated that Lykins did not need constant supervision at home but did need supervision and assistance for around 25 hours per week due to his cognitive deficits. The report also noted that Lykins's cognition had improved earlier in the year, while his physical abilities had declined.

Two doctors who examined and treated Lykins after the accident—Dr. Anthony Odland and Dr. Jesse Heuer—expressed opinions that appeared to contradict the report from Mitchell Disability Assessments. In an October 2016 report, Dr. Heuer—Lykins's

primary physician—wrote that Lykins suffered from left-sided hemineglect,[1] had difficulties with executive functioning, and needed continuous supervision. In an April 2016 report, Dr. Odland—a clinical neuropsychologist—opined that Lykins had significant impairments in complex attention, processing speed, and executive functioning—including "decreased insight/self-awareness, mental flexibility, disinhibition, [and] complex problem solving." Dr. Odland highlighted Lykins's behavioral issues, which included frustration, impulsivity, and irritability. In February 2017, Dr. Odland concluded that "the quality and severity of persistent residual cognitive and behavioral/psychiatric symptoms from [Lykins's] September 2015 head injury are severe and debilitating, and will require that he receive 24/7 supervision and supportive services on a long-term basis." Dr. Odland reiterated similar conclusions—including an opinion that Lykins would require 24/7 care for the rest of his life—in a March 2017 letter to attorney Ellig.

Unable to agree on the necessary amount of home nursing care, the parties attended a mediation in April 2017. Summarizing the mediation results in an email, the mediator

---

[1] "Hemineglect" or "hemispatial neglect" is:

> a common disabling condition following unilateral brain damage . . . . Patients with neglect often fail to be aware of or acknowledge items on their contralesional side (the left side for patients with right brain damage) and attend instead to items towards the same side as their brain damage—their ipsilesional side. Their neglect may be so profound that they are unaware of large objects, or even people, in extrapersonal space.

A. Parton, P. Malhotra & M. Husain, *Hemispatial Neglect*, 75 J. Neurology, Neurosurgery & Psychiatry, Jan. 2004 at 13, 13.

noted that the parties had reached a tentative settlement of $630,000 and that Anderson's attorney, Thomas Davern, would discuss the proposed terms with the insurer, SFM. The mediator also stated that the parties would stipulate to the reasonableness of attorney Ellig's excess fees given the complexity of the issues and Lykins's "intense need for guidance and support throughout this process." Less than a month later, however, the parties agreed to settle the case for $438,000—a sum that was $192,000 less than the tentative amount set at the mediation.

The parties' agreement included a full, final, and complete settlement of all past or future claims for: "temporary total disability, temporary partial disability, permanent impairment/permanent partial disability, permanent total disability . . . and nursing services by either a family member or custodial service." The settlement also included a stipulation of $93,000 for Ellig's fees divided into three categories: $26,000 in contingency fees; $55,000 in excess fees; and $12,000 in non-contingent *Roraff* fees.[2] The parties agreed that the contingency fees and the excess fees would be subtracted from the $438,000 payment to Lykins, but the *Roraff* fees would be paid by Anderson.

On May 18, 2017, Ellig sent Davern a letter requesting that, when filing the settlement with the compensation judge, Davern include "the Statement of Attorney Fees and Excess Fee Exhibit with several attachments" (the Statement and Exhibits) as an attachment. Ellig's letter stated that he had attached the Statement and Exhibits to the

---

[2]     *Roraff* fees are "fees based on and related to the recovery of medical expenses." *Irwin v. Surdyk's Liquor*, 599 N.W.2d 132, 134 (Minn. 1999); *see also Roraff v. State, Dep't of Transp.*, 288 N.W.2d 15, 16 (Minn. 1980).

letter.  The Statement and Exhibits included: Lykins's retainer agreements with Ellig; a form titled "Excess Fee Exhibit"; Dr. Heuer's October 2016 Report; and a note from a Qualified Rehabilitation Consultant opining that Ellig had shown professionalism in handling Lykins's workers' compensation claim.  On May 19, 2017, Davern submitted the settlement, initialed by Lykins, to the compensation judge with a cover letter.  Attachments to the settlement submitted to the compensation judge included: notices of intervention; a ledger of nursing services payments made to Lykins's wife; and the report from Mitchell Disability Assessments.  Davern did not attach the Statement and Exhibits, or any medical records, to the settlement.  Davern's cover letter expressed support for the excess fees included in the settlement due to the complexity of the matter and the time that Ellig spent helping Lykins, whom Davern called "a confused and upset client."

The compensation judge approved the settlement and issued an award on May 22, 2017.  That same day, Ellig filed a request for excess fees, including the Statement and Exhibits, with the Workers' Compensation Division of the Department of Labor and Industry.

In 2018, the parties agreed to an addendum to the settlement.  Anderson agreed "to purchase one pair of hearing aids for [Lykins]" and to pay an additional $1,000 in *Roraff* fees to Ellig.

In July 2022, attorney John Bailey petitioned for appointment of a conservator to represent Lykins in proceedings before the WCCA and the Office of Administrative

Hearings. The district court approved the appointment of a conservator[3] for those proceedings as well as "in any other litigation that may be undertaken on [Lykins's] behalf," effective September 22, 2022.

On August 30, 2023, Conservator filed a petition asking the WCCA to set aside the 2017 settlement and the 2018 addendum (collectively, the Settlements).[4] Conservator asserted two reasons for setting aside the Settlements. First, Conservator alleged that the Settlements are invalid because, when Lykins signed them, he was an incapacitated person and could not settle his claims without a conservator. *See* Minn. Stat. § 176.521, subd. 1(a) (stating that a settlement is "not valid if a . . . conservator is required under section 176.092 and an employee . . . has no . . . conservator"); Minn. Stat. § 176.092, subd. 1 (requiring a conservator for an injured employee who is an "incapacitated person"). Second, Conservator alleged that Anderson's failure to file relevant medical reports with the proposed settlement amounted to fraud by omission, which was cause to set aside the Settlements under Minnesota Statutes section 176.461. *See* Minn. Stat. § 176.461 (stating that the WCCA may set aside a workers' compensation award and grant a new hearing "for

___

[3]     The district court initially appointed George Duranske as Lykins's conservator. It appears that John Hoscheid has since replaced Duranske as Lykins's conservator. We refer to Duranske and Hoscheid collectively as "Conservator."

[4]     The WCCA hears petitions to set aside awards in the first instance. Minn. Stat. § 176.521, subd. 3. The WCCA reviews the facts in the record during such proceedings. *Hudson v. Trillium Staffing*, 896 N.W.2d 536, 540 (Minn. 2017) (reviewing the WCCA's decision on a petition to set aside an award to ensure the WCCA's decision is not inconsistent with the facts in the record). As happened here, the WCCA may also refer the matter for additional fact-finding by a compensation judge. *See* Minn. Stat. § 176.521, subd. 3; Minn. Stat. § 176.381, subd. 1 (2024).

8

cause" and defining "for cause" to include "fraud"). Conservator asserted that, had those medical reports been filed before the approval of the Settlements, the compensation judge would have referred the matter to district court for consideration of appointment of a conservator under Minnesota Statutes section 176.092, subdivision 3.

Anderson responded, denying both claims. Anderson filed exhibits that it alleges show that Lykins was not incapacitated when he signed the Settlements.

After a hearing, the WCCA concluded that "[t]he evidence submitted with the petition . . . raises significant questions of fact regarding [Lykins's] capacity" when he signed the Settlements. *Lykins v. Anderson Contracting, Inc.*, No. WC23-6532, 2024 WL 1183511, at *5 (Minn. WCCA Mar. 8, 2024). The WCCA recognized that "[u]nder Minnesota workers' compensation law"—specifically Minnesota Statutes section 176.521, subdivision 1(a)—"an 'agreement to settle any claim is not valid if . . . a conservator is required under section 176.092 and an employee has no . . . conservator.' " *Id.* at *4 (quoting Minn. Stat. § 176.521, subd. 1(a)); *see also* Minn. Stat. § 176.092, subd. 1 (requiring a conservator for an injured employee who is an "incapacitated person"). As a result, the WCCA determined that it could not address the issues presented in the petition without first knowing whether Lykins was in fact incapacitated when he signed the Settlements. *Id.* To get an answer to that question, the WCCA referred the matter for fact-finding by a compensation judge.[5] *Id.* The WCCA further instructed that, if the

---

[5] The WCCA recognized that it had authority to refer the matter for factual findings to a compensation judge under Minnesota Statutes section 176.381, subdivision 1 (2024). Minnesota Statutes section 176.521, subdivision 3, provides similar authority specific to the context of setting aside an award made upon settlement.

9

compensation judge were to conclude that Lykins appeared to lack capacity at the time the Settlements were signed, the compensation judge "shall refer the matter to district court . . . for a determination of whether [Lykins] was in fact incapacitated at the time of the [Settlements]." *Id.* The WCCA explained that, under Minnesota Statutes section 176.092, subdivision 3, "the compensation judge has jurisdiction to refer the matter to district court for a determination of whether the employee was incapacitated and in need of a conservator at the time of the settlements." *Id.* Given its decision to refer the matter for fact-finding, the WCCA did not address the merits of Conservator's claims.

Both sides appealed the WCCA's order on different grounds, asking for clarity and challenging the authority of the WCCA to issue the order as drafted.

## ANALYSIS

This case requires us to examine the interplay between several provisions of the Workers' Compensation Act (the Act), Minnesota Statutes chapter 176 (2024), which governs workers' compensation claims. The Act allows parties to settle workers' compensation claims, subject to certain conditions and requirements. Minn. Stat. § 176.521. The Act governs the validity of a workers' compensation settlement between an employee and an employer and sets forth the procedure by which such agreements may be set aside. *Id.* Minnesota Statutes section 176.521, subdivision 1(a), sets forth the requirements for a valid settlement agreement. In relevant part, subdivision 1(a) provides that an agreement between an employee and employer or insurer to settle a work-related injury claim is "not valid if a guardian or conservator is required under section 176.092 and an employee or dependent has no guardian or conservator." Minn. Stat. § 176.521,

10

subd. 1(a). Subdivision 2 sets out the procedure for approval of a proposed settlement by the commissioner, a compensation judge, or the district court. Minn. Stat. § 176.521, subd. 2. Subdivision 2 requires that "[s]ettlements shall be approved only if the terms conform with this chapter." Minn. Stat. § 176.521, subd. 2. Subdivision 3 authorizes the WCCA to "set aside an award made upon a settlement, pursuant to" the Act—even after a settlement agreement is approved and benefits are awarded. Minn. Stat. § 176.521, subd. 3. Subdivision 3 also authorizes the WCCA to "refer the matter to the chief administrative law judge for assignment to a compensation judge for hearing." *Id.*

The parties challenge the WCCA's order on various bases. We start by addressing Anderson's contentions that the WCCA erred when it requested additional fact-finding because, as a matter of law, the petition and evidence fail to establish grounds for setting aside the Settlements. Because we conclude that the WCCA did not err when it requested fact-finding, we then address whether the WCCA erred when it ordered a referral to the district court to determine whether Lykins was incapacitated when he signed the Settlements.[6] We further conclude that the evidence submitted to support the petition to

---

[6] The parties also ask us to clarify and then rule on the ultimate issues presented in this case: whether the award should be set aside, either due to Lykins' incapacity when he signed the Settlements or because the Settlements were the result of fraud. But the WCCA itself has not yet answered those questions. The WCCA "is a specialized agency of the executive branch, its members selected for their experience and expertise . . . ." *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 61 (Minn. 1984). In recognition of the WCCA's expertise—and also because the WCCA has yet to consider the ultimate issues of this case and a compensation judge has yet to conduct the contemplated fact-finding—our decision is limited to those issues that the WCCA has decided. *See Lipka v. Minn. Sch. Emps. Ass'n, Local 1980*, 550 N.W.2d 618, 622 (Minn. 1996) (stating that "judicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us").

11

set aside the awards made a sufficient prima facie showing that Lykins was incapacitated when he signed the Settlements. The WCCA, however, incorrectly concluded that Minnesota Statutes section 176.092, subdivision 3, requires a compensation judge to refer the issue to the district court under these circumstances. Instead, the WCCA should have referred the matter to a compensation judge for a determination of Lykins's capacity when he signed the Settlements.

## I.

Conservator's petition presented the WCCA with two paths to set aside the award: The WCCA could conclude that the Settlements are invalid under Minnesota Statutes section 176.521, subdivision 1(a), or it could set them aside "for cause" under Minnesota Statutes section 176.461. Both paths work in operation with Minnesota statutes section 176.521, subdivision 3, which states that "upon the filing of a petition by any party to the settlement, the [WCCA] may set aside an award made upon a settlement, pursuant to this chapter." The basis of the first path, Minnesota Statutes section 176.521, subdivision 1(a), provides that an agreement to settle "is not valid if a guardian or conservator is required under section 176.092 and an employee or dependent has no guardian or conservator." The second path is rooted in Minnesota Statutes section 176.461(a), which authorizes the WCCA to set aside a workers' compensation award and grant a new hearing "for cause." Section 176.461(b) limits the phrase "for cause" to four circumstances: "(1) a mutual mistake of fact; (2) newly discovered evidence; (3) fraud; or (4) a substantial change in medical condition since the time of the award that was clearly not anticipated and could not reasonably have been anticipated at the time of the award."

Anderson argues that the WCCA erred when it requested fact-finding because the petition and evidence submitted fail as a matter of law to establish that the Settlements are invalid under section 176.521, subdivision 1(a), or that the Settlements should be set aside for cause under section 176.461. As we have long recognized, one way a party may seek relief under section 176.521, subdivision 3, is by petitioning the WCCA to set aside an award made upon a settlement for cause under section 176.461. *See Maurer v. Braun's Locker Plant*, 298 N.W.2d 439, 441–42 (Minn. 1980). But we have not yet had the opportunity to consider whether establishing "cause" under section 176.461 is the *only* way the WCCA may set aside an award made upon a settlement under section 176.521, subdivision 3. For that reason, we turn our attention to clarifying whether Minnesota Statutes section 176.521, subdivision 3, authorizes the WCCA to set aside an award because it is invalid under section 176.521, subdivision 1(a).[7]

To resolve this issue, we must interpret section 176.521, subdivision 3, which provides that "upon the filing of a petition by any party to the settlement, the [WCCA] may set aside an award made upon a settlement, pursuant to this chapter." Our goal is to "ascertain and effectuate the intention of the [L]egislature." *State v. Beganovic*, 991 N.W.2d 638, 643 (Minn. 2023) (citing Minn. Stat. § 645.16 (2024)). "To do so, we

---

[7]    Neither party squarely addresses this threshold issue. But it is important because the WCCA's referral order appears to rest upon the language in Minnesota Statutes section 176.521, subdivision 1(a), stating that a settlement agreement is not valid if the employee has no conservator when one is required. We address this issue in reliance on our inherent authority to consider issues raised below but "not articulated in precisely the manner necessary to clearly present the issues for appellate review." *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 875 (Minn. 2010).

13

first examine the plain meaning of the text—the word[s'] plain and ordinary meaning . . . ." *Beganovic*, 991 N.W.2d at 643. An application of our tools of statutory interpretation shows that the language in subdivision 3 gives the WCCA discretion to set aside an award that is "not valid" under Minnesota Statutes section 176.521, subdivision 1(a).

To start, subdivision 3 broadly authorizes the WCCA to use its discretion to set aside awards made upon settlement "pursuant to" the Act. Minn. Stat. § 176.521, subd. 3; *see Beganovic*, 991 N.W.2d at 643 (noting that a term in a statute "is to be read broadly" where the term "is not modified or limited in any way"). There is no dispute here that Conservator seeks to set aside the Settlements based on section 176.521, subdivision 1(a), a provision within the Act.

And the scope of section 176.521, subdivision 3, becomes even clearer when we consider it alongside section 176.461. When two statutes "were enacted at the same time and for the same purpose, we may properly consider both in our effort to understand the plain language of the statute." *Beganovic*, 991 N.W.2d at 645. Here, both statutes were adopted at the same time as part of the same enactment and for the same purpose—to provide a means for seeking relief from a workers' compensation award. *See* Act of Apr. 24, 1953, ch. 755, §§ 63, 69, 1953 Minn. Laws 1099, 1146–47, 1150 (codified as amended at Minn. Stat. § 176.521, subd. 3 (2024); Minn. Stat. § 176.461 (2024)). Because the Legislature enacted the two statutes at the same time and for the same purpose, "it is reasonable to assume that all of the provisions inform the legislators' understanding of the text of the statute[s]." *Beganovic*, 991 N.W.2d at 645.

14

If the Legislature intended to restrict the "pursuant to" language in section 176.521, subdivision 3, solely to section 176.461, "the Legislature would have taken a much more direct path to do so." *Buzzell v. Walz*, 974 N.W.2d 256, 265 (Minn. 2022); *see Sterry v. Minn. Dep't of Corr.*, 8 N.W.3d 224, 234 (Minn. 2024) (rejecting an interpretation because "[i]f the Legislature had intended [to adopt such an interpretation], it would be reasonable to expect it would have done so in the language of the statute"). Although the Legislature could have written the statute to limit the WCCA's ability to set aside an award solely to the provisions of section 176.461, it did not do so. "When a question of statutory construction involves a failure of expression rather than an ambiguity of expression, courts are not free to substitute amendment for construction and thereby supply the omissions of the [L]egislature." *Botler v. Wagner Greenhouses*, 754 N.W.2d 665, 671 (Minn. 2008) (citation omitted) (internal quotation marks omitted). And "[w]e will not read into the statute any modifying or limiting language." *Beganovic*, 991 N.W.2d at 643 (citing *Gen. Mills, Inc. v. Comm'r of Revenue*, 931 N.W.2d 791, 800 (Minn. 2019) (noting that we cannot add words or meaning to a statute that were intentionally or inadvertently omitted)). Interpreting the "pursuant to" language in section 176.521, subdivision 3, solely as a reference to section 176.461 "works too hard and unduly strains the ordinary meaning of the language adopted by the Legislature." *State v. Fugalli*, 967 N.W.2d 74, 78 (Minn. 2021).

Section 176.521, subdivision 1(a), also guides our interpretation of subdivision 3. When it was enacted in 1953, it contemplated that certain agreements were not "valid." The Legislature understood that certain agreements were not "valid" when it passed

15

subdivision 3, because it passed both provisions at the same time. Act of Apr. 24, 1953, ch. 755, § 69, 1953 Minn. Laws 1099, 1149–50 (codified as amended at Minn. Stat. § 176.521, subds. 1(a), 3); *cf. Nash v. Comm'r of Pub. Safety*, 4 N.W.3d 812, 819 (Minn. 2024) ("The Legislature plainly understood the rule set forth in [Minnesota Statutes section 171.177,] subdivision 2—the Legislature enacted the language at the same time it enacted [Minnesota Statutes section 171.177,] subdivision 1."). The requirements in subdivision 1(a), declaring only certain agreements "valid," would lose their intended effect if a party could not enforce them by requesting that the WCCA set aside an invalid award. This cannot be what the Legislature intended. Because we interpret statutes to give effect to all of their provisions, our interpretation of subdivision 3 is necessary to give effect to the requirements in subdivision 1(a).

In a similar vein, interpreting section 176.521, subdivision 3, as limiting the WCCA's ability to set aside an award only "for cause" under section 176.461 risks rendering subdivision 3 superfluous. If the Legislature had intended to narrow the relief available under section 176.521, subdivision 3, to include *only* the relief available under section 176.461, the Legislature could have stated as much—either in section 176.461 or in section 176.521, subdivision 3—or it could have omitted section 176.521, subdivision 3, altogether. *See Buzzell*, 974 N.W.2d at 265; *Nash*, 4 N.W.3d at 819. But the Legislature did not do so. Instead, the Legislature enacted both section 176.521, subdivision 3, and section 176.461, and we must give effect to both provisions.

In recognition of the broad language of Minnesota Statutes section 176.521, subdivision 3 (that the WCCA may set aside an award made upon a settlement pursuant to

16

chapter 176) and the plain language of section 176.521, subdivision 1(a) (that "[a]n agreement to settle any claim is not valid if a guardian or conservator is required under section 176.092 and an employee or dependent has no guardian or conservator"), we conclude that the WCCA may set aside an award made upon a settlement under section 176.521, subdivision 3, when the settlement is invalid under section 176.521, subdivision 1(a).[8]

II.

Because we conclude that Minnesota Statutes section 176.521, subdivisions 1(a) and 3, allow the WCCA to set aside an award upon an invalid settlement, we next turn to Anderson's argument that the WCCA erred when it found that Conservator made a prima facie showing that Lykins was incapacitated when he signed the Settlements.

We begin by clarifying the applicable law. Minnesota Statutes section 176.521, subdivision 1(a), provides that "[a]n agreement to settle any claim is not valid if a guardian or conservator is required under section 176.092 and an employee or dependent has no guardian or conservator." Section 176.092, subdivision 1, in turn, addresses when a conservator is required and does so by incorporating by reference the definition of "incapacitated person" found in Minnesota Statutes section 524.5-102, subdivision 6. When conducting its analysis, the WCCA referred to the 2022 version of Minnesota Statutes section 524.5-102, subdivision 6. *Lykins*, 2024 WL 1183511, at *5. Conservator

---

[8]     To be clear, we hold *only* that the WCCA may set aside an award that is invalid under section 176.521, subdivision 1(a). We have no occasion to decide, and expressly do not decide, whether the WCCA's authority to set aside an award extends beyond invalidity under section 176.521, subdivision 1(a), and the circumstances set forth in section 176.461.

asserts that the WCCA should have applied the version of Minnesota Statutes section 524.5-102, subdivision 6, that was in effect when the parties signed the Settlements in 2017 and 2018. We agree.

"Where settlements must conform to the law at the time of settlement, the law at the time of settlement applies for purposes of reopening awards." *Monson v. White Bear Mitsubishi,* 663 N.W.2d 534, 539 (Minn. 2003). Further, when an act incorporates a provision of another statute, the act includes the language of the incorporated statute as if it had been written into the act itself. *See, e.g.*, *State v. Robinson*, 921 N.W.2d 755, 759 (Minn. 2019). Minnesota Statutes section 176.092, subdivision 1, has not been amended since the Settlements were signed in 2017 and 2018. But that section incorporates the definition of "incapacitated person" found in Minnesota Statutes section 524.5-102, subdivision 6, which the Legislature amended in 2020. *See* Act of May 16, 2020, ch. 86, art. 1, § 3, 2020 Minn. Laws 294, 295. The 2016 version of Minnesota Statutes section 524.5-102, subdivision 6, is the definition relevant here, because it was the definition incorporated into section 176.092, subdivision 1, at the time of the Settlements.

Although the WCCA applied the wrong version of the statute, we decline Conservator's request that we reverse the WCCA on that basis. The differences between the 2016 and 2022 versions of the statute are minor. *Compare* Minn. Stat. § 524.5-102, subd. 6 (2016), *with* Minn. Stat. § 524.5-102, subd. 6 (2022). The WCCA's findings and reasoning are applicable to both versions of the statute.

We next consider Anderson's argument that the WCCA erred when it concluded that Conservator made a prima facie showing that Lykins was an incapacitated person when

he signed the Settlements.[9]  *See* Minn. Stat. § 524.5-102, subd. 6 (2016) (defining an "incapacitated person" as a person who "lack[s] sufficient understanding or capacity to make or communicate responsible personal decisions, and who has demonstrated deficits in behavior which evidence an inability to meet personal needs . . . ."); *Monson*, 663 N.W.2d at 541 (requiring a prima facie showing on petition to set aside an award).  A party required to make a prima facie showing must submit evidence or allege facts that, if unchallenged or accepted as true, would be sufficient to prove that the party is entitled to the requested relief.  *State v. Hinckley*, 5 N.W.3d 680, 685–86 (Minn. 2024); *State v. Larson*, 281 N.W.2d 481, 484 (Minn. 1979).

Here, when the WCCA referred the question of whether Lykins was an incapacitated person when he signed the Settlements, it implicitly found that the evidence submitted made a prima facie showing.  And the WCCA expressly found that there was no dispute that the evidence demonstrated that Lykins could not meet his personal needs when the Settlements were signed and that there was "compelling evidence in the record to put into

---

[9]     Anderson asserts that allowing a retroactive inquiry into an employee's capacity at the time of settlement will require judges to determine an employee's "appearance" years after the fact.  The amicus brief submitted by the Minnesota Defense Lawyers Association also raises concerns that this approach will "inject uncertainty" into the settlement process. Although we appreciate these concerns, our job is to apply the statute as written by the Legislature.  *Meils ex rel. Meils v. Nw. Bell Tel. Co.*, 355 N.W.2d 710, 713 (Minn. 1984) ("Since workers' compensation is solely a creature of statute, policy decisions regarding the scope of the Workers' Compensation Act are properly for the [L]egislature . . . .").  The statutes at issue reflect the "legislative balancing of the interests of employees and employers." *Profit v. HRT Holdings*, 987 N.W.2d 575, 584 (Minn. 2023).  Resulting policy concerns are better addressed to the Legislature.  *Correa v. Waymouth Farms, Inc.*, 664 N.W.2d 324, 331 (Minn. 2003) ("[I]f policy considerations favor a different result, that determination is more properly left to the [L]egislature to make.").

question whether [Lykins] lacked the understanding or capacity to make personal decisions at the time of the [Settlements]." *Lykins*, 2024 WL 1183511, at *5.

We review a WCCA order to determine whether its factual findings "were unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 176.471, subd. 1(3); *see also Lagasse v. Horton*, 982 N.W.2d 189, 201 (Minn. 2022). We will disturb those findings "only if, viewing the facts in the light most favorable to the findings, it appears that the findings are manifestly contrary to the evidence or that it is clear reasonable minds would adopt a contrary conclusion." *Sershen v. Metro. Council*, 974 N.W.2d 1, 7 (Minn. 2022) (citation omitted) (internal quotation marks omitted). Here, the record supports the WCCA's findings. Most of the documents in the record, including those submitted by Anderson, consistently reflect that Lykins's medical providers were concerned about his cognitive functioning at the relevant time.

Anderson's contention that Lykins does not meet the definition of an incapacitated person because Lykins "participated in numerous court proceedings" without a conservator does not undermine the WCCA's determination. With one exception, each of the court proceedings highlighted by Anderson occurred *after* Lykins signed the Settlements. These later proceedings do not conclusively establish Lykins's capacity when he signed the Settlements. And it appears from the record that the only court proceeding that occurred during the relevant time was Lykins's 2017 bankruptcy. This fact, to the extent that it is relevant to whether Lykins was an incapacitated person, does not require us to conclude that the WCCA erred when it found that Conservator made a prima facie showing that Lykins was an incapacitated person when he signed the Settlements. To accept Anderson's

20

argument at this stage would require us to weigh conflicting evidence. That task is properly reserved for the compensation judge. *See* Minn. Stat. § 176.381; *Lagasse,* 982 N.W.2d at 201 (noting that we leave "basic fact-finding to the compensation judge who presides at the evidentiary hearing" (citation omitted) (internal quotation marks omitted)).

For these reasons, we cannot conclude that the WCCA's findings—that there is no dispute that Lykins could not meet his personal needs and there was sufficient evidence in the record to create a dispute of fact as to Lykins's capacity to make personal decisions when he signed the Settlements—are "manifestly contrary to the evidence." *Sershen*, 974 N.W.2d at 7 (citation omitted) (internal quotation marks omitted).

III.

Having determined that the claims alleged in Conservator's petition to set aside the award—and the evidence submitted to support those claims—made a prima facie showing that Lykins was an incapacitated person when he signed the Settlements, we next address whether the WCCA nonetheless erred in its instructions to the compensation judge. The WCCA directed that, if the compensation judge makes a preliminary finding that Lykins appeared to be incapacitated when he signed the Settlements, the compensation judge must refer the matter to the district court to determine whether Lykins was in fact incapacitated. The WCCA relied on Minnesota Statutes section 176.092, subdivision 3, in concluding that the compensation judge must make such a referral. Both parties assert that section 176.092, subdivision 3, does not authorize the WCCA to mandate a referral to district court to determine whether a conservator should have been appointed in earlier proceedings.

21

To resolve this issue, we interpret section 176.092, subdivision 3, another question that we review de novo. *Block v. Exterior Remodelers, Inc.*, 935 N.W.2d 735, 737 (Minn. 2019). We start with the plain meaning of the text. *Beganovic*, 991 N.W.2d at 643. Minnesota Statutes section 176.092, subdivision 3, requires a compensation judge to make a referral to the district court when it appears that an employee is incapacitated: "When, in a proceeding before them, it appears to the . . . compensation judge . . . that an injured employee . . . [is] an incapacitated person without a guardian or conservator, the . . . compensation judge, or court of appeals shall refer the matter to district court."

The plain language of section 176.092, subdivision 3, limits the compensation judge's responsibility and authority to refer a matter to district court to instances when: (1) in a proceeding before the compensation judge; (2) the employee appears to be an incapacitated person; and (3) is without a guardian or conservator. This provision does not contemplate referral to district court when, as is the case here, the issue is whether an employee who now has a conservator met the definition of an incapacitated person several years ago. For this reason, we conclude that the WCCA's instructions to the compensation judge relied on an incorrect interpretation of the law and that a referral by the compensation judge to the district court would be improper here.

IV.

A final question remains: If the referral language in section 176.092, subdivision 3, does not apply to this situation, may the WCCA and compensation judges (collectively, the workers' compensation courts) determine whether Lykins was incapacitated when he signed the Settlements?

22

As a threshold matter, the WCCA has clear authority to refer questions of fact to a compensation judge. Minnesota Statutes section 176.381, subdivision 1, broadly permits that "[i]n the hearing of any matter before the [WCCA], the chief judge of the [WCCA] may refer any question of fact . . . for assignment to a compensation judge . . . to hear evidence and make findings of fact and report them to the [WCCA]." And the statutory provision giving specific authority to the WCCA to set aside an award made upon a settlement, further permits that "[i]n appropriate cases, the Workers' Compensation Court of Appeals may refer the matter to the chief administrative law judge for assignment to a compensation judge for hearing." Minn. Stat. § 176.521, subd. 3.

To answer the specific question of whether the workers' compensation courts may determine whether Lykins was incapacitated when he signed the Settlements, we must examine the subject matter jurisdiction of the workers' compensation courts. This is a question of law that we review de novo. *Giersdorf v. A & M Constr., Inc.*, 820 N.W.2d 16, 20 (Minn. 2012).

"Subject matter jurisdiction is the court's authority to hear the type of dispute at issue and to grant the type of relief sought." *Musta v. Mendota Heights Dental Ctr.*, 965 N.W.2d 312, 317 (Minn. 2021) (citation omitted) (internal quotation marks omitted). The subject matter jurisdiction of the workers' compensation courts is limited by statute and "does not extend to interpretation of laws outside of legal questions and facts arising under the workers' compensation law." *Id.* at 320. The workers' compensation courts' "powers are plenary" in cases arising under the Workers' Compensation Act, allowing those courts to hear and determine the legal and factual questions presented by a case.

23

*Hagen v. Venem*, 366 N.W.2d 280, 283 (Minn. 1985). The workers' compensation courts lack authority, however, to construe Minnesota statutes other than the Workers' Compensation Act. *Martin v. Morrison Trucking, Inc.*, 803 N.W.2d 365, 369 (Minn. 2011); *see also* Minn. Stat. § 175A.01, subd. 5 (2024). And their jurisdiction "does not extend to interpreting or applying legislation designed specially for the handling of claims outside the workers' compensation system." *Sundby v. City of St. Peter*, 693 N.W.2d 206, 215 (Minn. 2005).

Here, resolution of the issues presented in Conservator's petition to set aside the award requires only interpretation and application of the Workers' Compensation Act. As discussed above, an agreement to settle workers' compensation claims is invalid "if a guardian or conservator is required under section 176.092 and an employee or dependent has no guardian or conservator." Minn. Stat. § 176.521, subd. 1(a). A guardian or conservator is required when an employee is "an incapacitated person as that term is defined in section 524.5-102, subdivision 6." Minn. Stat. § 176.092, subd. 1. Minnesota Statutes section 176.092, subdivision 1, incorporates the definition from section 524.5-102, subdivision 6, into the Act.

Because the Act incorporates the definition of "incapacitated person," whether Lykins was an incapacitated person when he signed the Settlements presents an issue that

24

arises under the Act.[10]  For this reason, we conclude that the workers' compensation courts have the authority to decide the issue in these circumstances.[11]

*     *     *

In summary, we hold that the WCCA correctly concluded that an evidentiary hearing can and should be held to determine the fact issues presented.  Minnesota Statutes section 176.521, subdivision 3, authorizes the WCCA to set aside a workers' compensation

---

[10]     When an employee who is an incapacitated person does not have a conservator, it makes sense for the compensation judge to make a referral to district court for appointment of a conservator because the Act does not empower the workers' compensation courts to appoint a conservator.  *See* Minn. Stat. § 176.092, subd. 3.  Rather, the district court has exclusive jurisdiction in the appointment of a conservator.  *See* Minn. Stat. § 524.5-501 (2024) (establishing the district court's authority to appoint a conservator based on a referral under Minnesota Statutes section 176.092, subdivision 3); *see also* Minn. Stat. § 524.5-401 (2024) (establishing the district court's authority to appoint a conservator outside of workers' compensation proceedings).

[11]     Anderson also argues that the question of Lykins's capacity when he signed the Settlements is not justiciable because it presents a "purely hypothetical question."  In the unique circumstances presented in this case, we agree that the question of Lykins's capacity is likely not a justiciable question before the district court because that question is relevant only to the resolution of the petition to set aside the awards in Lykins's workers' compensation proceedings.  Whether Lykins was an incapacitated person is not part of a case in controversy before the district court—which already determined that Lykins needed a conservator in 2022.  *See Winkowski v. Winkowski*, 989 N.W.2d 302, 308 n.7 (Minn. 2023) (stating that "Minnesota courts may only hear actual cases and controversies").  That said, the workers' compensation courts' determination of incapacity is necessary to address the claims raised in Lykins's petition to set aside the awards.  Those claims are based on Lykins's assertion of his statutory rights in the Act, and they are capable of specific resolution by judgment.  *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617–18 (Minn. 2007) ("A justiciable controversy exists if the claim (1) involves definite and concrete assertions of right that emanate from a legal source, (2) involves a genuine conflict in tangible interests between parties with adverse interests, and (3) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion.").  For these reasons, the question of Lykins's capacity when he signed the Settlements is justiciable *before the workers' compensation courts*, even though it may not be justiciable *before the district court*.

25

award made upon a settlement if the WCCA determines that the settlement is not valid under section 176.521, subdivision 1(a). Before making such a determination, the WCCA is also statutorily authorized to refer questions of fact to a compensation judge. But the WCCA erred when it required the compensation judge to refer the matter to district court for an ultimate determination of incapacity. Instead, the WCCA should have referred the matter to a compensation judge to determine whether Lykins was an incapacitated person—as that term was defined in the 2016 statute—when he signed the Settlements. *See* Minn. Stat. § 524.5-102, subd. 6 (2016).

## CONCLUSION

For the foregoing reasons, we affirm in part and vacate in part the decision of the WCCA. We vacate the WCCA's instructions to the compensation judge insofar as they may require referral of the issue of capacity to district court under Minnesota Statutes section 176.092, subdivision 3. We otherwise affirm the WCCA's decision.

Affirmed in part; vacated in part.